In the Matter of the Application for Disciplinary Action Against David A. OVERBOE, a Member of the Bar of the State of North Dakota.

DISCIPLINARY BOARD OF the SUPREME COURT OF the STATE of North Dakota, Petitioner,

v.

David A. OVERBOE, Respondent.

Civ. No. 11294.

Supreme Court of North Dakota.

March 26, 1987.

Vivian E. Berg, Staff Counsel for the Disciplinary Board of the Supreme Court, Bismarck, for petitioner.

Lundberg, Nodland, Lucas & Schulz, Bismarck, for respondent; argued by Irvin B. Nodland.

PER CURIAM.

This disciplinary proceeding against attorney David A. Overboe involves two separate complaints in which he acknowledges that he practiced law under a misleading name in violation of Canon 2, DR 2–102(B) and (C), North Dakota Code of Professional Responsibility,[1] and that he misused funds in a client's trust account in violation of

---

1. Canon 2, DR 2–102, provides, in relevant part:
    "(B) A lawyer in private practice may not practice under a trade name, a name that is misleading as to the identity of the lawyer or lawyers practicing under that name, or a firm name containing names other than those of one or more of the lawyers in the firm, but the name of a professional corporation or professional association may contain 'P.C.' or 'P.A.' or similar symbols indicating the nature of the organization, and if otherwise lawful a firm may use as, or continue to include in, its name the name or names of one or more deceased or retired members of the firm or of a predecessor firm in a continuing line of succession. A lawyer who assumes a judicial, legislative, public executive, or administrative post or office may not permit his name to remain in the name of a law firm or to be used in professional notices of the firm during any significant period in which he is not actively and regularly practicing law as a member of the firm, and during that period other members of the firm may not use his name in the firm name or in professional notices of the firm.
    "(C) A lawyer may not hold himself out as having a partnership with one or more other lawyers unless they are in fact partners."

Canon 9, DR 9–102(A) and (B)(3) and (4), N.D.C.P.R.[2]

Following a disciplinary hearing, the hearing panel of the Disciplinary Board of the Supreme Court recommended that Overboe receive a public reprimand for violating Canon 2, DR 2–102(B) and (C), N.D.C.P.R. and that his license to practice law be suspended for no less than six months for misusing trust funds.

■ In his brief to this court, Overboe has not raised any arguments concerning the hearing panel's recommendation that he receive a public reprimand for violating Canon 2, DR 2–102(B) and (C), N.D.C.P.R. During oral argument to this court, counsel for Overboe stated that Overboe was "willing to accept" the public reprimand for that conduct. Consequently, we will treat that statement as an admission that the public reprimand was appropriate, and we therefore order that Overboe be publicly reprimanded for that conduct.

■ Similarly, Overboe acknowledges that he misused trust funds from Trust Account 1762. However, Overboe argues that he should receive a public reprimand, rather than a suspension, for that conduct. Alternatively, Overboe requests that he be ordered to perform a substantial number of hours of free legal services for distressed farmers who cannot afford to retain an attorney.

In this case the evidence presented at the disciplinary hearing concerning the misuse of trust funds establishes that, on November 26, 1984, Overboe deposited a $53,427.44 check payable to Ronald Brakke, Dakota National Bank, and the Farmers Home Administration (FmHA) into Trust Account 24–69001762 (1762) at Metropolitan Federal. On December 19, 1984, Overboe wrote a $12,000 check on Trust Account 1762 for his personal use. On December 27, 1984, Overboe issued a $53,427.44 check drawn on Trust Account 1762 and made payable to Brakke and FmHA. Because Overboe had withdrawn money from Trust Account 1762 for his personal use, Trust Account 1762 contained insufficient funds to cover the $53,427.44 check when Brakke presented it for payment on December 27 and 28, 1984. On January 2, 1985, Overboe deposited into Trust Account 1762 a $12,000 check written on Trust Account No. 24–69001705 (1705) at Metropolitan Federal. The money in Trust Account 1705 included a $7,000 check, dated January 2, 1985, issued by Overboe on his account with Dakota National Bank. As a result of those transactions Overboe paid the NSF check with a certified check drawn on Trust Account 1762 at Metropolitan Federal. After Metropolitan Federal certified that check, Dakota National Bank returned Overboe's $7,000 check because of insufficient funds, and at the time of the disciplinary hearing, Overboe had not reimbursed Metropolitan Federal for the $7,000 dishonored check.

Overboe relies on *Matter of Application for Disciplinary Action Against Lee*, 283 N.W.2d 179 (N.D.1979), to support his position that he should receive a public reprimand for misusing trust funds. In that case attorney Lee received a $3,000 check from his client with instructions to pay that amount to the client's former wife. Lee deposited that check in his business ac-

---

**2.** Canon 9, DR 9–102, provides, in relevant part:

"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

"(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

"(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

"(B) A lawyer shall:

\* \* \* \* \*

"(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

"(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

count and thereafter issued a check drawn on his business account to his client's former wife. Lee's bank dishonored the check twice because of insufficient funds. Lee subsequently paid the check; however, the client's former wife lost $16.38 in interest and the use of the money for fifty days while Lee's check remained unpaid. In that case the Disciplinary Board recommended that Lee be publicly reprimanded. We observed that Lee's conduct had tarnished the reputation of the legal profession and diminished the public's respect for and confidence in it. However, in publicly reprimanding Lee rather than suspending him, we relied on his otherwise unmarred record, his remorse, his action in remedying the accounting practice, and his payment of the dishonored check before disciplinary proceedings were commenced.

In *Lee, supra,* we distinguished the factual situation from that presented in *Matter of Jaynes,* 278 N.W.2d 429 (N.D.1979) [*Jaynes II*]; *In re Jelliff,* 271 N.W.2d 588 (N.D.1978); *Matter of Jaynes,* 267 N.W.2d 782 (N.D.1978) [*Jaynes I*]; and *Matter of Walton,* 251 N.W.2d 762 (N.D.1977), because the commingling of Lee's client's funds with his funds involved less egregious conduct than the mishandling of clients' funds involved in those cases. In *Lee, supra,* we also distinguished the factual situation from that in *Jaynes I, supra; Jelliff, supra;* and *Walton, supra,* because in those cases the disciplined attorney made no attempt to return the funds to the client until an investigation of alleged unethical conduct began. We further distinguished the factual situation in *Lee, supra,* from that in *Jaynes II, supra,* because in that case the disciplined attorney had repeatedly engaged in, or had been suspected of engaging in, unethical conduct. In each of those cases, we suspended the attorney for a period of time.

In his brief to this court, Overboe states that no other disciplinary complaints have ever been made against him. In her brief to this court, counsel for the Disciplinary Board informed us that Overboe has previously received a private reprimand for unrelated conduct. During oral argument counsel for Overboe did not dispute the previous private reprimand. Additionally, we must also be cognizant of the public reprimand we have issued in this case for Overboe's violation of Canon 2, DR 2-102(B) and (C), N.D.C.P.R. The instant action also involved the mishandling of a trust account rather than the commingling of his client's funds with his own funds. Furthermore, although Overboe paid the first NSF check with a certified check, Overboe had not reimbursed Metropolitan Federal for the $7,000 NSF check at the time of the disciplinary hearing. During oral argument to this court, counsel for Overboe stated that Overboe had made restitution to Metropolitan Federal that morning. We believe that this belated effort coupled with the earlier discussed factors concerning Overboe's conduct distinguishes this case from *Lee, supra.*

After carefully considering Overboe's conduct and the findings and conclusions of the hearing panel, we conclude, as did the hearing panel, that Overboe's license to practice law should be suspended for six months and that he must apply for reinstatement of his license. Because Overboe's conduct has brought reproach upon the legal profession which cannot be taken lightly, we conclude that any less severe or alternative penalty would be inadequate.

In accordance with this opinion, we order that the Clerk of the Supreme Court disseminate copies of this opinion to the news media serving the State Capitol and Cass County. We also order that Overboe's license be suspended for six months and that he must apply for reinstatement of his license when that period has expired. The suspension shall commence on May 10, 1987, and in the interim Overboe shall fully comply with the notification procedures for suspended attorneys pursuant to Rule 14 of the North Dakota Rules of Disciplinary Procedure. We further order that Overboe pay the expenses of the disciplinary proceeding as may be determined by the Disciplinary Board.