**In re Petition for DISCIPLINARY ACTION AGAINST Dewey M. NELSON, a Minnesota Attorney, Registration No. 77677.**

No. A06–1370.

Supreme Court of Minnesota.

June 21, 2007.

Dewey M. Nelson, Eden Prairie, MN, Attorney Pro Se.

Martin A. Cole, Director, Timothy M. Burke, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, MN, for Petitioner.

## OPINION

PER CURIAM.

This attorney disciplinary action arose out of a petition filed by the Director of the Office of Lawyers Professional Responsibility alleging that attorney Dewey M. Nelson committed misconduct that violated Minnesota Rules of Professional Conduct for: failing to act diligently (Rule 1.3); failing to place client funds in a trust account (Rule 1.15(a) as interpreted by Board Opinion 15[1]); failing to refund to the client the unearned portion of client funds (Rule 1.15(c)(4)); failing to protect the client's interest at the termination of representation (Rule 1.16(d)); failing to expedite litigation (Rule 3.2); knowingly making false statements to the client (Rule 4.1); failing to respond to the disciplinary authority (Rule 8.1(b)); engaging in dishonest conduct (Rule 8.4(c)); and engaging in conduct that is prejudicial to the administration of justice (Rule 8.4(d)). In addition, the director claimed that Nelson violated the Minnesota Rules on Lawyers Professional Responsibility (RLPR) for failing to comply with the director's investigation (Rule 25).[2] The referee recommended that Nelson be suspended from the practice of law and be ineligible to apply for reinstatement for a minimum of six months. We adopt the referee's recommendation in full.

---

1. Opinion 15 was repealed on January 26, 2006.

2. The Minnesota Rules of Professional Conduct were amended effective October 1, 2005, and the Minnesota Rules on Lawyers Professional Responsibility were amended effective September 1, 2005. Some of the conduct at issue in this case occurred before and some after the effective dates of the amendments. None of the amendments have any substantive effect on the issues or analysis in this case. Therefore, for simplicity, we cite only the current versions of the applicable rules.

Nelson was admitted to the practice of law in Minnesota in June 1966. He currently practices in Eden Prairie, Minnesota, as a solo practitioner, primarily in the areas of personal injury, criminal defense, immigration, estate planning, and family law.

Before this disciplinary action, Nelson had an extensive disciplinary history. He was: (1) admonished because he made threats of criminal prosecution to coerce payment in a civil matter (1984); (2) admonished because he failed to adequately communicate with a client (1988); (3) admonished because he failed to timely refund the unearned portion of a client's retainer (1988); (4) admonished because he charged interest on client monies without prior written agreement (1989); (5) placed on private probation for failure to diligently pursue the completion of an estate matter and failure to adequately communicate with his client (1990); (6) admonished because he failed to adequately communicate with a client and terminated his representation of a client without sufficient notice (1993); (7) admonished because he failed to diligently pursue a client matter, allowing the statute of limitations to expire (1996); (8) placed on private probation for failure to place client fees in a trust account without a retainer agreement, and for failing to act diligently (1999); (9) placed on extended private probation from 1999 because he neglected client matters, failed to communicate with a client, and failed to return a client's file (2000).

The director's current allegations against Nelson stem from Nelson's representation of two clients.

In May 2005, M.E. hired Nelson to file a motion to vacate a default judgment. Nelson and M.E. agreed on a payment of $400 for all legal work. Nelson did not file the motion to vacate the default judgment until January 2006, after Nelson had received notice from the director that a complaint had been filed against him. Nelson does not dispute that months before he actually filed the motion papers, he told M.E. that he had already filed the papers. To this Nelson said: "I guess the main purpose was for me to buy some time in order to get the paper work done and filed."

In March 2003, M.L. hired Nelson to handle an appeal of a summary judgment that had been entered against M.L. M.L. advanced Nelson a total of $4,750 to be applied toward attorney fees and filing fees. Before the notice of appeal was filed, Nelson informed M.L. that the appeal was not meritorious. Nelson and M.L. agreed that Nelson would refund M.L. $2,500 by June 15, 2005. Nelson did not refund M.L. until May 2006, "because there was not sufficient monies coming in to his law business that would allow him to make the refund and still continue to support his family." Nelson admits that payment to M.L. was not timely.

## I.

■■■ Nelson ordered a transcript of the referee's hearing, thereby preserving his right to challenge the referee's factual findings. Rule 14(e), RLPR. Nevertheless, we will give great deference to a referee's findings and will not reverse those findings "unless they are clearly erroneous." *In re Wentzell,* 656 N.W.2d 402, 405 (Minn.2003). The standard of proof in an attorney discipline proceeding is full, clear, and convincing evidence. *In re Getty,* 452 N.W.2d 694, 696 (Minn.1990) citing *In re Ruhland,* 442 N.W.2d 783, 785 (Minn.1989).

### *M.E. Matter*

■■ The referee found that Nelson falsely stated to M.E. that Nelson had filed the motion to vacate the default judgment

when in fact he had not, and that certain hearing dates had been scheduled or cancelled when in fact no hearing date had been scheduled because the motion had not been filed. The referee concluded that Nelson's conduct in the M.E. matter violated Rules 1.3, 3.2, 4.1, and 8.4(c) and (d).[3]

Nelson "acknowledges that the misrepresentations and the failure to timely complete the motion to vacate the judgment was in violation of the Minnesota Rules of Professional Conduct." Nelson essentially argues in mitigation that he attempted to correct his conduct when he apologized to M.E., offered to file the motion, received M.E.'s approval to file the motion, and obtained a satisfactory outcome. Nelson states that he understood M.E. to be satisfied with the resolution of the matter. But we note that M.E. was not completely satisfied with the outcome because, although Nelson was able to get a $1,000 discount from the judgment against him, M.E. testified that he did not have any other choice due to the delay in filing the motion to vacate the judgment.

We conclude that the referee's findings that Nelson made false statements to M.E. were not clearly erroneous.

*M.L. Matter*

■ The referee found that Nelson did not have a written retainer agreement with M.L. and failed to deposit M.L.'s funds in a client trust account. Instead, Nelson placed the funds into a personal account and spent the monies for his own benefit. The referee also found that Nelson failed to refund the unearned portion of the client's funds when requested. The referee concluded that Nelson violated Rule 1.15(a), as interpreted in Opinion No. 15, and Rules 1.15(c)(4) and 1.16(d).[4]

Nelson argues that he had an oral retainer agreement with M.L. to provide services on a "project fee basis," which was then permitted by Opinion No. 15, and implies that the funds paid as a project fee become the funds of the attorney and need not be deposited in a trust account. He argues that even if he and M.L. had made a written retainer agreement, it would not have changed his conduct. Rather, he states:

> The thing that was wrong was that [he] did not have sufficient cash flow to make the refund at the time that he had agreed to make it * * *. The fact that [he] did not have sufficient income to comply with the terms of the agreement

---

3. Rule 1.3 requires that a lawyer "act with reasonable diligence and promptness in representing a client."

Rule 3.2 provides that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

Rule 4.1 provides that "[i]n the course of representing a client a lawyer shall not knowingly make a false statement of fact or law."

Rules 8.4(c) and (d) state that it is misconduct for a lawyer to engage in conduct "involving dishonesty, fraud, deceit or misrepresentation" and conduct that is "prejudicial to the administration of justice."

4. Rule 1.15(a) mandates that "[a]ll funds of clients * * * held by a lawyer * * * in connection with representation shall be deposited in one or more identifiable interest bearing trust accounts." Opinion 15 provides that "[a]ll advance fee payments must be deposited into an interest bearing trust account * * *."

Rule 1.15(c)(4) provides that a lawyer shall "promptly pay or deliver to the client * * * as requested the funds * * * in the possession of the lawyer which the client * * * is entitled to receive."

Rule 1.16(d) provides that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as * * * surrendering papers and property to which the client is entitled, and refunding any advance payment of fees or expenses that has not been earned or incurred."

* * * should not be a basis for discipline.

In mitigation, Nelson argues that he refunded the unearned portion of the funds to M.L. in full, with interest.

The problem with Nelson's argument is that Opinion 15 only recognized a project fee, which the opinion referred to as a "non-refundable retainer agreement," where it was clearly set forth in a written retainer agreement that notified the client that the funds will not be refunded, and will not be placed in a trust account. Nelson had no such written agreement with M.L., and therefore Nelson was required to place the $4,750 payment in a trust account until earned. Nelson did not earn the entire $4,750 because he did not complete the project, but withdrew from representation. Later, Nelson agreed with M.L. that $2,500 of the payment was not earned and would be refunded.

We conclude that the referee's findings that Nelson failed to deposit M.L.'s funds in a trust account and failed to refund the unearned portion of the client's funds when requested were not clearly erroneous.

*Failure to Cooperate with Director*

■ The referee found that Nelson continually failed to timely respond to the director's requests for information. Also, the referee found that Nelson misled the director. For example, the referee found that, in a letter to the director dated March 21, 2006, Nelson said "Regarding [M.L.'s] claim, I have enclosed a copy of a money order for $500 as payment on account," but Nelson did not send the money order to M.L. until months later. The referee found that Nelson's statements were "misleading and exhibit[ed] a lack of candor." The referee concluded that Nelson's conduct violated Rules 8.1(a)(3) and 8.1(b) and Rule 25, RLPR.[5]

Nelson argues that he was cooperative with the director's investigation, and simply "requested extensions when he needed them [and those] extensions were granted." He argues that requests for extensions should not be a basis for an allegation of the failure to cooperate with the director's investigation. The record does not support this argument. The director requested considerable information and documentation that Nelson failed to timely provide. And the director specifically informed Nelson that his failure to cooperate with the director could provide a separate basis for discipline.

We conclude that the referee's findings that Nelson failed to cooperate with the director's investigation were not clearly erroneous.

## II.

■ Although we place great weight on the recommendation of the referee, we retain the final responsibility for determining the appropriate sanction. *In re Wood*, 716 N.W.2d 341, 347 (Minn.2006). In making this determination, we consider four factors: (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession. *In re Jagiela*, 517 N.W.2d 333, 335 (Minn.1994). "While this court looks to similar cases for guidance, sanctions are determined on a case-by-case basis after

---

5. Rule 8.1(b) provides that in connection with a disciplinary matter a lawyer shall not "knowingly fail to respond to * * * demand for information" from discipline authority. Rule 8.1(b) was previously numbered 8.1(a)(3).

Rule 25, RLPR, requires that when a lawyer "is the subject of an investigation" the lawyer must cooperate with the director by complying with reasonable requests, including requests to "[f]urnish designated papers, documents or tangible objects."

examining the acts of misconduct and considering both aggravating and mitigating circumstances." *In re Mayrand,* 723 N.W.2d 261, 268 (Minn.2006). A lawyer's prior disciplinary history is relevant to determine an appropriate sanction. *In re Gherity,* 673 N.W.2d 474, 480 (Minn.2004).

### Nature of Misconduct

■ The director cites three cases, among others, that demonstrate similar sanctions for similar misconduct: *Wood, In re Selmer,* 568 N.W.2d 702 (Minn.1997), and *In re Jensen,* 542 N.W.2d 627 (Minn. 1996). We agree that these cases support an indefinite suspension for a minimum of six months for Nelson's misconduct.

We have said that a continuous pattern of neglect warrants indefinite suspension. *See In re Brooks,* 696 N.W.2d 84, 88 (Minn.2005). Further, we have said that trust account violations "almost invariably result in lengthy suspension at the very least." *In re Lochow,* 469 N.W.2d 91, 98 (Minn.1991). Also, noncooperation with the disciplinary process, by itself, may warrant indefinite suspension and, when it exists in connection with other misconduct, noncooperation increases the severity of the disciplinary sanction. *In re Samborski,* 644 N.W.2d 402, 407 (Minn.2002).

Nelson argues that an admonition would be the appropriate discipline. He argues that suspension of his license would essentially result in his removal from the practice of law. But Nelson does not cite any cases where an admonition was viewed as the appropriate discipline for similar misconduct.

■ In mitigation Nelson argues that he has repaid, with interest, the remaining advance fee owed to M.L., and he has resolved M.E.'s legal matter to M.E.'s satisfaction. "An attorney's discipline may be mitigated by evidence that he cooperated with the investigation, did not attempt to conceal the misconduct, has taken actions to ameliorate the problems, and shows that he appreciates the harm his actions caused." *Wentzell,* 656 N.W.2d at 409. But the referee rejected Nelson's claims of mitigation and found that Nelson was only remorseful after he was confronted with irrefutable evidence of his misconduct and that during the hearing Nelson did not offer any other claim or evidence of mitigation.

### Cumulative Weight

■ "[T]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser,* 679 N.W.2d 153, 160 (Minn. 2004).

In this context, Nelson argues that it is a violation of his due process rights to consider his discipline history as an aggravating factor without prior notice. But the director made clear, in Nelson's prior disciplinary matters, that Nelson's disciplinary history was a factor to consider. Further, we have said that attorney disciplinary history is a serious aggravating factor. *See Mayrand,* 723 N.W.2d at 269.

■ We "expect[ ] a renewed commitment to comprehensive ethical and professional behavior after a disciplinary proceeding, and [w]here leniency has been shown once, we are reluctant to do so again." *In re Haugen,* 543 N.W.2d 372, 375 (Minn.1996) (internal quotations omitted). Although Nelson has not been before this court on a disciplinary matter, his conduct after numerous disciplines imposed by the director has fallen short of renewing his commitment to the ethical practice of law. *See id.* at 374 (using attorney's disciplinary history as an aggravating factor where the attorney had been

publicly reprimanded, admonished twice, placed twice on private probation, and had his license suspended). Nelson has been admonished six times, and placed on private probation three times, in part, for neglect of client matters and trust account violations. We have said that similarity of misconduct is evidence of a lack of renewed commitment. *Id.* at 375.

### Harm to Public and Profession

 Finally, we must consider the harm to the public and legal profession. The purpose of attorney discipline is not to punish the attorney but rather to protect the courts, the public, and the legal profession. *In re Stanbury,* 614 N.W.2d 209, 213 (Minn.2000). The referee found that Nelson's misconduct caused a bank to attach funds in M.E.'s bank account, caused M.E. to pay higher interests rates when he purchased a home, and prevented M.L. from using the money Nelson owed M.L. at a time when his family home had just burned down. The referee also found that Nelson made false statements to both clients. We have said that "[h]onesty and integrity are chief among the virtues the public has a right to expect of lawyers. Any breach of trust is misconduct of the highest order and warrants severe discipline." *In re Ruffenach,* 486 N.W.2d 387, 391 (Minn.1992).

Finally, the referee found that Nelson is not amenable to probation because his disciplinary history reflects a pattern of misconduct that has not significantly changed. The referee also found a number of aggravating factors and no mitigating factors. We conclude that the record fully supports the referee's factual findings, legal conclusions, and recommendation for discipline. We therefore hold that Nelson's misconduct warrants the discipline recommended by the referee.

Accordingly, we order that:

1. Respondent Dewey M. Nelson is suspended from the practice of law in the State of Minnesota commencing 20 days from the date of this decision, and is ineligible to apply for reinstatement for a minimum of six months after suspension;

2. Nelson must comply with the requirements of Rule 26, RLPR;

3. Nelson must pay the director $900 in costs, plus disbursements, pursuant to Rule 24, RLPR; and

4. If Nelson seeks reinstatement, he shall comply in all respects with Rule 18, RLPR.

So ordered.