In re PETITION FOR DISCIPLINARY ACTION AGAINST David A. OVER-BOE, a Minnesota Attorney.

No. A07–259.

Supreme Court of Minnesota.

March 13, 2008.

Martin A. Cole, Director, Timothy M. Burke, Senior Assistant Director, St. Paul, for appellant.

David A. Overboe pro se.

## OPINION

PER CURIAM.

In September 2004, the Director of the Office of Lawyers Professional Responsibility initiated a formal disciplinary investigation of David A. Overboe that was triggered by an overdraft on Overboe's client trust account. Following numerous com-

munications between the Director and Overboe, the Director filed a petition for disciplinary action against Overboe alleging that Overboe had 1) deceptively used a trust account to shield his personal funds from judgment creditors; 2) made misrepresentations and failed to cooperate with the Director during a disciplinary investigation; and 3) commingled client funds with personal funds. The referee assigned to hear the case found that Overboe's conduct violated the Minnesota Rules of Professional Conduct and the Minnesota Rules on Lawyers Professional Responsibility, and recommended that Overboe be suspended from the practice of law for a minimum of 1 year. Overboe appeals the referee's findings of fact, conclusions of law, and recommendation. We conclude that the referee's findings were not clearly erroneous and that the appropriate discipline under these facts is to suspend Overboe from the practice of law for a minimum of 1 year.

David A. Overboe was admitted to the practice of law in Minnesota on June 13, 1980. Overboe is also licensed to practice law in North Dakota. At all times relevant to this matter, Overboe's law practice was located in North Dakota. Overboe maintained two relevant bank accounts in North Dakota: 1) an account at Western State Bank entitled "Overboe Trust Account" (WSB trust account); and 2) an Interest on Lawyers Trust Accounts (IOLTA) account at Wells Fargo Bank, also entitled "Overboe Trust Account" (IOLTA account). In 2003, Overboe certified on his annual Minnesota attorney license application that his IOLTA account at Wells Fargo Bank was his client trust account. On March 16, 2004, Overboe had an overdraft on his IOLTA account. Overboe had written an $8,000 check on the account when the account balance was only $515.67.

*Correspondence with the Director of the Office of Lawyers Professional Responsibility*

Pursuant to Minn. R. Prof. Conduct 1.15(*l*), Wells Fargo Bank notified the Office of Lawyers Professional Responsibility of Overboe's IOLTA account overdraft. On March 19, 2004, the Director sent Overboe a notice of the overdraft, requesting an explanation and documents pertaining to the account, such as client ledgers. On March 29, 2004, Overboe responded that "[t]he check was written to transfer funds to [his] family farm account," which is in his wife's name. Overboe also stated that "[t]here were no client funds in the account at the time that check was issued" and there had not been client funds in the account since April 21, 2003. He did not include client ledgers with his response. Overboe further explained:

> At the time the check was written I believed that there was [sic] sufficient funds in the account to cover the $8,000.00 check. I wrote the check without checking. The check was written on March 15th, 2004. On March 16th I checked to see if there were sufficient funds to cover the check and found that there was not. I promptly deposited two checks totaling $9,500.00 in the account on March 16th, 2004.

In this exchange of letters, Overboe made no mention of his WSB trust account.

On May 3, 2004, the Director requested additional information regarding the overdraft. The Director asked Overboe to explain the basis on which Overboe believed there were sufficient funds in his IOLTA account because at the time of the overdraft, the account balance was only $515.67. The Director also indicated that the IOLTA account had since been closed and that a check for the $9,985.67 balance in the account was made payable to "Overboe Trust Account." The Director asked

for an explanation of why the IOLTA funds were placed in the "Overboe Trust Account" and requested the books and records for that account. In his response on May 14, Overboe stated:

The $8,000 check was supposed to be drawn on a different account. I was going to deposit the funds in that account to cover the check when I realized the check has been drawn on this account. * * *

The $515.57 balance in the trust account was my funds * * *.

Overboe did not mention or include any records of his WSB trust account with the May 14 letter. Overboe again stated that no client funds were involved in the overdraft.

The Director then requested further explanation, specifically concerning the "different account" Overboe referred to in his previous response. Overboe responded that the other account that he meant to draw the check from was a personal account—the "Overboe Trust Account" at Western State Bank. This was the first time Overboe identified the WSB trust account to the Director. Overboe suggested that because both the IOLTA account and WSB trust account bore the same name and the checks for each account looked "similar," he mistakenly wrote a check from the IOLTA account when he actually meant to write it from his personal WSB trust account.[1] According to Overboe, the WSB trust account was opened for the purpose of "transactions between [his] wife and [him]," and not for client funds. Overboe also stated:

Approximately 15 years ago a judgment was taken against me for 1 and 1/2 million dollars as a result of my investing $6,000.00 in a farmer cooperative.

It is necessary for me to be careful about transferring funds between by [sic] wife and me. It is also important that I not keep a great deal of money in my own account, because the law firm that obtained the Judgment is right next door to me.

This judgment was entered against Overboe in North Dakota federal court on May 22, 1990.

On September 9, 2004, the Director sent a letter notifying Overboe that the Office of Lawyers Professional Responsibility had initiated a formal investigation into his conduct. The Director made a request under Rule 25 of the Rules on Lawyers Professional Responsibility (RLPR) that Overboe provide further information regarding his trust accounts within 14 days. On September 28, 2004, Overboe responded with a letter stating that the purpose of his WSB trust account was to "handle funds between [his] wife and [him]. [He] handle[s] her business affairs. [He] did not want her funds levied on and tied up in court for months because of a Judgment against [him]. A joint account would not have worked." Concerning the IOLTA account, Overboe explained that on December 31, 2003, all the funds in his IOLTA account—$1,515.67—were his and on February 16, 2004, he wrote a $1000 check on the account to himself, leaving the $515.67 balance in the account at the time of the overdraft.

On December 29, 2004, in a response to another letter from the Director, Overboe agreed that he had designated his IOLTA account as his client trust account on his Minnesota annual attorney license application. In response to the Director's September 2005 request for further informa-

---

1. Overboe included copies of checks from his IOLTA account and his WSB trust account to demonstrate the similarity of the checks.

tion regarding the clients whose funds were kept in the IOLTA account at various times, Overboe stated that he believed providing this information would violate N.D. R. Prof. Conduct 1.6. Overboe and the Director continued to exchange letters concerning this issue. Eventually, Overboe requested that the North Dakota Ethics Committee issue an advisory opinion on the matter. After the North Dakota Ethics Committee issued its advisory opinion, Overboe provided information about one client. After another request, Overboe eventually provided the Director with the remainder of the requested client information.

The Director filed a petition for disciplinary action on February 5, 2007. In the petition, the Director alleged that Overboe: 1) violated Minn. R. Prof. Conduct 8.4(c) by deceptively using a trust account; 2) violated Minn. R. Prof. Conduct 8.1(a) and 8.4(c), as well as Rule 25, RLPR, through his misrepresentations to and noncooperation with the Director during the disciplinary investigation; and 3) violated Minn. R. Prof. Conduct 1.15(a) by commingling client funds and his personal funds in his IOLTA account.

*Referee Hearing*

On March 27, 2007, we appointed a referee to hear this matter. In preparation for the hearing, Overboe served the Director with Interrogatories and a Request for Production of Documents. The Director filed a response approximately one month later. Overboe requested that the Director respond more adequately to the interrogatories and document requests. Overboe then filed a Motion to Compel Discovery and for a Continuance of the hearing. The referee denied Overboe's motions.

At the hearing, Overboe testified that the WSB trust account was a personal account opened to handle funds between himself and his wife. Overboe acknowledged that the purpose of the WSB trust account was to protect his wife's funds from attachment by Overboe's judgment creditors because if he had a joint account with his wife the funds could be seized due to the outstanding judgment against him. But Overboe stated that the purpose of the WSB trust account was not to protect his own funds, because even if in the account, his funds are subject to levy. Overboe later stated that his funds in the WSB trust account are not subject to levy because they are exempt under North Dakota Law due to an exemption in lieu of homestead. Nevertheless, Overboe admitted and provided no explanation for the fact that in his responses to the Director's letters he stated that the purpose of the WSB trust account was to protect his own funds as well as his wife's.

The Director submitted to the referee a spreadsheet of activity for Overboe's WSB trust account from March 13, 2003, to January 27, 2004. According to the information on the spreadsheet, Overboe was the source of every deposit into the trust account, and the majority of the funds deposited in the account were Overboe's earned fees for legal services. Further, Overboe was the payee of approximately half the checks written on the account. Only two of the checks were made out to Overboe's wife.

The Director also offered into evidence a spreadsheet of Overboe's IOLTA account activity from April 16, 2003, to March 19, 2004. According to the information on the spreadsheet, at all times before the overdraft that triggered the current disciplinary proceedings, the account had a surplus, meaning that the overall amount of funds in the account was greater than the amount of client funds in the account. Further, the spreadsheet showed that on April 16, 2003, Overboe deposited $77,675

into his IOLTA account on behalf of a client and on July 25, 2003, Overboe deposited $200 into the IOLTA account on behalf of another client. At the time that these client funds were in the account, Overboe had over $1,000 of his own funds in the account. Overboe agreed that the numbers on the spreadsheet were accurate but asserted that the amount of surplus was nonetheless overstated for two reasons. First, Overboe stated that his wife was a client, so her funds in the IOLTA account should not have been considered part of the surplus. Overboe asserted that using this analysis, the surplus amount in the IOLTA account when client funds were also in the account only reached a maximum of $29.67.[2] Overboe provided no documentation evidencing that his wife was a client.

For his second reason, Overboe stated that $4,500 of the surplus in the IOLTA account at one time was money Overboe had deposited with the purpose of donating it to the local V.F.W. for a war veterans memorial. While Overboe acknowledged that the V.F.W. was not a client, he stated that the money was properly in his IOLTA account because he was setting it aside "for the benefit of" the V.F.W. memorial. Overboe also admitted that part of the reason for putting the donation money into the IOLTA account was to avoid the possibility that judgment creditors would levy on it. Overboe stated that after the V.F.W. notified him that it no longer needed his donation, he eventually took the $4,500 out of the trust account for himself.

*Referee's Findings of Fact, Conclusions of Law, and Recommendation for Discipline*

*Deceptive Use of a Trust Account.* The referee found that Overboe "did not use the WSB trust account as a fiduciary ac-

count in his capacity as a lawyer," but instead as a personal account. In light of the $1.4 million judgment against him and his admissions that the account was opened to protect his personal funds, the referee concluded that Overboe's use of the WSB trust account was deceptive and violated Minn. R. Prof. Conduct 8.4(c).

*Misrepresentations to and Noncooperation with the Director.* The referee found that Overboe made false statements to the Director about the purpose and nature of his WSB trust account because Overboe was not using the account in a fiduciary capacity. The referee also found that Overboe's testimony that the majority of the surplus funds in the IOLTA account belonged to his wife as a client was inconsistent with his numerous prior statements to the Director that there were no client funds in the IOLTA account and that the testimony was false. The referee concluded that these actions violated Minn. R. Prof. Conduct 8.1(a) and 8.4(c), as well as Rule 25, RLPR.

*Commingling and Other Trust Account Improprieties.* The referee found that on April 16, 2003, the total balance of Overboe's IOLTA account consisted of his personal funds. Additionally, the referee concluded that Overboe violated Minn. R. Prof. Conduct 1.15(a), and put his clients' funds at risk of attachment by commingling personal funds with client funds when he deposited $77,675 in client funds into the account on April 16, 2003, and $200 in client funds into the account on July 25, 2003, while maintaining approximately $1,100 of his own funds in the account.

*Prior Discipline.* The referee also found that Overboe had been disciplined for professional misconduct on two previ-

---

**2.** Overboe also offered as an exhibit a letter to the Director stating that he had made a mistake when he stated in his December 29, 2004, letter that his IOLTA account contained no client funds on May 30, 2003.

ous occasions. In 1987, the North Dakota Supreme Court suspended him from the practice of law for 6 months for practicing law under a misleading firm name and for misusing funds in a client trust account. *In re Overboe*, 403 N.W.2d 1, 1–3 (N.D. 1987). In that case, Overboe withdrew $12,000 from his client trust account for his own personal use. *Id.* at 2. Overboe subsequently wrote a check to a client from the same account, which resulted in an overdraft on the account. *Id.* Overboe then used a dishonored check from another overdrawn account to pay for the non-sufficient funds (NSF) check. *Id.* In 1988, the North Dakota Supreme Court suspended Overboe for 90 days for, inter alia, 1) "[e]ngag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation"; 2) "[c]onceal[ing] or knowingly fail[ing] to disclose that which he is required by law to reveal"; 3) "[k]nowingly mak[ing] a false statement of law or fact"; and 4) "counsel[ing] or assist[ing] his client in conduct that [he knew] to be illegal or fraudulent." *In re Overboe*, 417 N.W.2d 853, 853–54 (N.D.1988).

*Recommendation for Discipline.* While the referee found that no clients were harmed by Overboe's actions, he found numerous aggravating factors, including that Overboe: 1) "committed multiple acts of professional misconduct [in this case] over an extended period of time"; 2) has a history of discipline for similar misconduct involving dishonesty and misuse of client funds; 3) "made false statements during the hearing before the referee"; and 4) "refused to acknowledge the wrongful nature of his misconduct." Further, the ref-

eree found that Overboe did not deposit checks from clients for unearned retainers into a client trust account, which is a violation of Minn. R. Prof. Conduct 1.15(a). Based on Overboe's conduct and these aggravating factors, the referee recommended that Overboe be suspended from the practice of law in Minnesota and be ineligible for reinstatement for a minimum of 1 year.

I.

Overboe first argues that the referee abused his discretion when he denied Overboe's Motion to Compel Discovery regarding the interrogatories and document requests Overboe served on the Director. In his motion to compel discovery, Overboe asserted that the Director provided insufficient answers to nine of the twenty-seven interrogatories and failed to provide documents for two of the five document requests. In five of the nine interrogatories and the two document requests Overboe sought to compel, Overboe asked the Director to provide case law or statutory law that supported the Director's allegations.[3] Overboe also asked the Director to explain how titling his WSB account as a "trust" account involved dishonesty and deceit in violation of Minn. R. Prof. Conduct 8.4(c). Overboe went on to request that the Director provide the dates on which Overboe maintained a balance of personal funds in his IOLTA account over the amount allowed by N.D. R. Prof. Conduct 1.15. Overboe also asked the Director to provide evidence that the personal funds in his WSB trust account were not exempt from legal process under North Dakota law.

---

**3.** In two interrogatories Overboe asked for a list of cases that supports the Director's allegation that Overboe's use of his WSB account was dishonest. Overboe also asked the Director to provide case law that supports the contention that Overboe's use of a trust account could shield money from creditors. In an interrogatory and a document request, Overboe asked the Director to provide a copy of North Dakota Rule of Professional Conduct 1.15 that states the maximum amount of personal funds a lawyer can have in his client account.

Finally, Overboe asked the Director to disclose the basis of the allegation that Overboe did not cooperate with the Director.

 A referee has broad discretion to issue discovery orders and will be "reversed on appeal only upon an abuse of such discretion." *In re File No. 17139*, 720 N.W.2d 807, 811 (Minn.2006) (quoting *Minn. Twins P'ship v. State ex rel. Hatch*, 592 N.W.2d 847, 850 (Minn.1999)). "The objective of our rules of discovery is to encourage the exchange of relevant information by the parties prior to trial and to discourage and prevent unjust surprise and prejudice at trial * * *." *Gale v. County of Hennepin*, 609 N.W.2d 887, 891 (Minn.2000). Thus, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to a claim or defense of any party." Minn. R. Civ. P. 26.02(a). But discoverable information must be "reasonably calculated to lead to the discovery of admissible evidence." *Id.* Evidence is admissible only if it is relevant evidence, Minn. R. Evid. 402, which relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Minn. R. Evid. 401.

The Director asserts that he adequately responded to or properly objected to each of Overboe's interrogatories and documents requests. We have reviewed the Director's answers and objections, and we conclude that the Director sufficiently answered or properly objected to each interrogatory and document request. We note that for a number of the interrogatories to which the Director objected, he still provided an answer. We further note that a number of Overboe's interrogatories and document requests fell outside the scope of permissible discovery. We therefore hold that the referee did not abuse his discretion in denying Overboe's motion to compel discovery.

## II.

Before reviewing the referee's findings and conclusions, we must as a preliminary matter determine whether the Minnesota or North Dakota professional responsibility rules apply to Overboe's conduct.[4] The Minnesota Rules of Professional Conduct state that "[a] lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, regardless of where the lawyer's conduct occurs." Minn. R. Prof. Conduct 8.5(a). Thus, Overboe is subject to our disciplinary authority because he is admitted to practice law in Minnesota. But Rule 8.5 further states that when the conduct in question is not connected to a matter pending before a tribunal, the rules of professional conduct that apply are

> the rules of the jurisdiction in which the lawyer's conduct occurred, or, if the predominant effect of the conduct is in a different jurisdiction, the rules of that jurisdiction shall be applied to the conduct. A lawyer shall not be subject to discipline if the lawyer's conduct conforms to the rules of a jurisdiction in which the lawyer reasonably believes the predominant effect of the lawyer's conduct will occur.

Minn. R. Prof. Conduct 8.5(b)(2). Therefore, the question for each allegation of misconduct is—where did the conduct and its predominant effect occur?

 The Director first alleges that Overboe deceptively labeled a personal ac-

---

4. We note that while we address this issue, the relevant North Dakota Rules of Professional Responsibility and Minnesota Rules of Professional Responsibility are nearly identical.

count as a trust account, the WSB trust account, to shield Overboe's personal funds from judgment creditors. The WSB trust account was held in a North Dakota bank. The judgment against Overboe was entered in the United States District Court for the District of North Dakota. Further, no clients in Minnesota or North Dakota were harmed by Overboe's conduct regarding the WSB trust account. Because Overboe held this personal account in North Dakota and because the use of the account did not have any predominant effects in Minnesota, we conclude that the North Dakota Rules of Professional Conduct apply to the allegations that Overboe deceptively used a personal trust account.

■ The second allegation against Overboe is that he made misrepresentations to and failed to cooperate with the Director during his disciplinary investigation. The Director is the representative of Minnesota's Office of Lawyers Professional Responsibility. Thus, regardless of where the conduct that is being investigated occurred, any conduct constituting misrepresentations to and noncooperation with the Director has its predominant effects in Minnesota. We therefore conclude that as to Overboe's alleged misrepresentations to and noncooperation with the Director, the Minnesota professional conduct rules apply.

■ Overboe's IOLTA account was held in a North Dakota bank. The alleged misconduct concerning the IOLTA account is that Overboe commingled client funds and personal funds in the account and maintained personal funds in the account that were not for permissible client purposes. At all times relevant to this matter, the funds held in the account were funds of Overboe, his wife, or North Dakota clients. While Overboe certified to our court on his annual Minnesota attorney license application that the IOLTA account

was his client trust account, the conduct at issue—improper use of a trust account and commingling client funds—occurred in North Dakota. Further, the possible effects of the conduct—the risk that judgment creditors would attach client funds—also occurred in North Dakota. Moreover, it was reasonable for Overboe to believe that the predominant effect of his conduct concerning his IOLTA account would occur in North Dakota. *See* Minn. R. Prof. Conduct 8.5(b)(2). We therefore conclude that Overboe's alleged IOLTA account misconduct is subject to review under the North Dakota Rules of Professional Conduct.

### III.

■ Having determined the appropriate rules under which to review each allegation, we now turn to the referee's findings. Overboe ordered a transcript of the hearing in this case, thereby preserving his right to challenge the referee's findings. Rule 14(e), RLPR; *In re Nelson,* 733 N.W.2d 458, 461 (Minn.2007). Nevertheless, we give "great deference to a referee's findings," *Nelson,* 733 N.W.2d at 461, and will uphold them "if they have evidentiary support in the record and are not clearly erroneous," *In re Moulton,* 721 N.W.2d 900, 905 (Minn.2006). Moreover, "[d]eference to the referee is particularly appropriate when the findings are based on a respondent's demeanor, credibility, or sincerity." *Id.* We will therefore only reverse a referee's findings if, " 'upon review of the entire evidence, [we are] left with the definite and firm conviction that a mistake has been made.' " *Id.* (quoting *In re Pinotti,* 585 N.W.2d 55, 62 (Minn.1998)).

### *Deceptive Use of a Trust Account*

■ The Director asserts that Overboe deceptively labeled a personal account that contained only Overboe's funds as a trust

account in order to shield his funds from judgment creditors. Overboe argues that it is neither unethical nor illegal for a lawyer to have a personal trust account such as his WSB trust account. The referee agreed with the Director and concluded that Overboe's establishment and use of the WSB trust account violated Minn. R. Prof. Conduct 8.4(c), which states that "[i]t is professional misconduct for a lawyer to * * * engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

■ The North Dakota Supreme Court, like our court, has made clear that lawyers have a "high duty of candor," stating that " '[t]ruth and candor are synonymous with justice, and honesty is an implicit characteristic of the legal profession.' " *In re Johnson,* 743 N.W.2d 117, 125 (N.D.2007) quoting *In re Kaiser,* 484 N.W.2d 102, 108 (N.D.1992). Further, N.D. R. Prof. Conduct 8.4(c) makes it "professional misconduct for a lawyer to * * * engage in conduct involving dishonesty, fraud, deceit, or misrepresentation that reflects adversely on the lawyer's fitness as a lawyer." North Dakota Rules for Lawyer Discipline 1.2A(3) states that a lawyer may be disciplined for "[e]ngaging in conduct involving dishonesty, fraud, deceit or misrepresentation." Deceit is defined as "[t]he act of intentionally giving a false impression." *Black's Law Dictionary,* 435 (8th ed.2004). We emphasize that to be disciplined under these rules, a lawyer's conduct need only be dishonest, fraudulent, deceitful, or misrepresentative, not necessarily illegal. *See, e.g., In re Howe,* 621 N.W.2d 361, 364 (N.D.2001) (imposing discipline on a lawyer for conduct that was not illegal but still violated

the professional responsibility rules); *see also* N.D. R. Prof. Conduct 8.4(b) (providing a separate ground to impose discipline when the lawyer has committed a criminal act).

■ Whether Overboe's use of his WSB trust account was deceptive depends on the proper use of a trust account. North Dakota requires that "a trust and its terms [are] for the benefit of its beneficiaries," N.D. Cent.Code § 59–09–05(2)(c) (2007), and that "the same person is not the sole trustee and sole beneficiary," N.D. Cent.Code § 59–12–02(1) (2007).[5] Moreover, North Dakota law mandates that "[a] trustee shall administer the trust solely in the interests of the beneficiaries." N.D. Cent.Code § 59–16–02(1) (2007). Based on this definition of a "trust," we conclude that a trust account must in some manner further the fiduciary relationship between the trustee and beneficiaries and must be held by a trustee for the benefit of at least one other person besides the trustee.

■ It is undisputed that Overboe has had a $1.4 million dollar judgment against him since 1990 and that the judgment remains unpaid. Further, in his letters to the Director before and during the disciplinary investigation, Overboe stated that the purpose of his WSB trust account was to protect his and his wife's funds from judgment creditors. Overboe emphasized that it was important for him to "not keep a great deal of money in [his] own account, because the law firm that obtained the Judgment is right next door to [him]." Evidence presented at the hearing also showed that Overboe was the source of every deposit into the WSB trust account and the payee of approximately half of the

---

**5.** The Restatement (Third) of Trusts § 2 (2003) defines "trust" as:

a fiduciary relationship with respect to property, arising from a manifestation of intention to create that relationship and

subjecting the person who holds title to the property to duties to deal with it for the benefit of charity or for one or more persons, at least one of whom is not the sole trustee.

withdrawals. Additionally, the majority of the funds deposited into the account were Overboe's earned legal fees. Only two checks written on the account were in the name of Overboe's wife.

In light of Overboe's admissions, and the evidence presented at the hearing, we conclude that the referee was not clearly erroneous in finding that Overboe did not use his WSB trust account as a trustee in a fiduciary capacity but instead used it as his own personal account. Therefore, in light of the $1.4 judgment against Overboe, it was not clearly erroneous for the referee to conclude that Overboe acted deceptively when he labeled his WSB account as a "trust" account for the purpose of shielding his personal funds from judgment creditors. While the referee incorrectly applied Minn. R. Prof. Conduct 8.4(c) to Overboe's conduct, North Dakota has parallel rules—N.D. R. Prof. Conduct 8.4(c) and N.D. R. Lawyer Discipl. 1.2A(3). Therefore, we conclude that Overboe violated N.D. R. Prof. Conduct 8.4(c) and N.D. R. Lawyer Discipl. 1.2A(3) by engaging in "conduct involving dishonesty, fraud, deceit, or misrepresentation."

*Misuse of IOLTA Account and Commingling of Client and Personal Funds*

Overboe argues that he did not commingle personal funds with client funds in his IOLTA account and that he did not improperly keep personal funds in that account. The referee found that during the

times that client funds were in the IOLTA account, the surplus funds in the account that Overboe claimed belonged to his wife as a client were Overboe's personal funds. The referee further found that the $4,500 that Overboe deposited in the account with the intention of donating it to the V.F.W. was Overboe's personal funds. Based on these findings, the referee concluded that Overboe violated Minn. R. Prof. Conduct 1.15(a)[6] by commingling personal and client funds. North Dakota has a rule similar to the Minnesota rule—N.D. R. Prof. Conduct 1.15—which states in part:

> **(a)** A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. * * *
>
> **(b)** A lawyer may deposit the lawyer's own funds in a client trust account only for the purpose of paying bank service charges, fees associated with credit card payments, or wire transfers related to that account, but only in an amount necessary for that purpose.

■ Evidence presented at the hearing included numerous letters from Overboe to the Director indicating that there were "no client funds" in his IOLTA account at the time of the overdraft and since April 2003. Overboe asserted that the majority of the surplus in his IOLTA account when client funds were in the account was his wife's money and that his wife was a client. But

---

**6.** Minnesota Rule of Professional Conduct 1.15 states in part:

(a) All funds of clients or third persons held by a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts * * *. No funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) funds of the lawyer or law firm reasonably sufficient to pay service charges may be deposited therein;

(2) funds belonging in part to a client or third person and in part presently or potentially to the lawyer or law firm must be deposited therein.

(b) A lawyer must withdraw earned fees and any other funds belonging to the lawyer or the law firm from the trust account within a reasonable time after the fees have been earned or entitlement to the funds has been established * * *.

Overboe did not make this assertion until well into the investigatory process and after the Director notified Overboe that having his personal funds in an IOLTA account violates the professional conduct rules. Further, Overboe offered no specific evidence that his wife was a client. Overboe also admitted at the hearing that the $4,500 he deposited into the IOLTA account on October 6, 2003, was not client money. Finally, Overboe offered no evidence that any of the personal funds in the IOLTA account were for the permissible purpose of "paying bank service charges, fees associated with credit card payments, or wire transfers related to that account." N.D. R. Prof. Conduct 1.15(b).

Based on the evidence and on Overboe's own statements, we conclude that it was not clearly erroneous for the referee to find that Overboe maintained personal funds in his IOLTA account and that he commingled personal and client funds in the account. While the referee applied the Minnesota rules in making this legal conclusion, we conclude that Overboe violated the parallel North Dakota rule, N.D. R. Prof. Conduct 1.15, by keeping personal funds in his IOLTA account and by commingling his personal funds with client funds.

*Misrepresentation and Noncooperation with the Director*

Overboe asserts that he accurately and honestly responded to and complied with all of the Director's inquiries and document requests. The Director asserts that Overboe did not cooperate and made misrepresentations regarding both the IOLTA account and the WSB trust account. The referee found that Overboe made numerous inconsistent and incomplete statements to the Director and failed to comply with document requests in violation of Minn. R. Prof. Conduct 8.1(a) and 8.4(c), and Rule 25, RLPR.

Minnesota Rule of Professional Conduct 8.1 states:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) *fail to disclose* a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

(Emphasis added.) Further, as stated above, Minn. R. Prof. Conduct 8.4(c) states that it is misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Rule 25(a) of the Rules on Lawyers Professional Responsibility states:

It shall be the duty of any lawyer who is the subject of an investigation or proceeding under these Rules to cooperate with the District Committee, the Director, or the Director's staff, the Board, or a Panel, by complying with reasonable requests, including requests to:

(1) Furnish designated papers, documents or tangible objects;

(2) Furnish in writing a full and complete explanation covering the matter under consideration;

(3) Appear for conferences and hearings at the times and places designated;

(4) Execute authorizations and releases necessary to investigate alleged violations of a conditional admission agreement.

 In his initial letter to Overboe, the Director asked him to provide client ledgers for his IOLTA account, which Ov-

erboe failed to do. In his May 3 letter, the Director asked Overboe to identify and provide records for the account into which he deposited the IOLTA funds when he closed the IOLTA account. Overboe did not provide any of the requested documentation. Overboe also failed to timely provide the Director with the information requested when the Director notified Overboe that a formal investigation into Overboe's conduct had been initiated. Based on this evidence we conclude that Overboe 1) "knowingly fail[ed] to respond to a lawful demand for information," Minn. R. Prof. Conduct 8.1(b);[7] 2) failed to "[f]urnish designated papers, documents or tangible objects;" and 3) failed to provide "a full and complete [written] explanation covering the matter under consideration," Rule 25, RLPR. Thus we conclude that the referee did not err in finding that Overboe violated Minn. R. Prof. Conduct 8.1 and 8.4(c), and Rule 25(a), RLPR.

Moreover, when the Director initially asked Overboe to explain the cause of the overdraft on the IOLTA account, Overboe stated that he thought there were sufficient funds in "the account" when he wrote the check and he made no mention of the WSB trust account or any other account. Then, in his May 3 letter, the Director also asked Overboe to explain the grounds on which he thought there were sufficient funds in the IOLTA account because there had only been $515.67 in the account. It was at this point that Overboe first stated that he meant to draw the funds from a "different account," but Overboe did not identify the "different account." Based on

this evidence, we conclude that the referee did not abuse his discretion in finding that Overboe's inconsistent statements to the Director regarding the cause of the IOLTA account overdraft were false and misleading under Minn. R. Prof. Conduct 8.4(c).

Overboe also made numerous statements to the Director that the WSB trust account was opened to protect both his and his wife's funds. When discussing the purpose of that account in a letter to the Director, Overboe stated that he could not keep a large amount of money in his own account because of the judgment against him. But then at the hearing Overboe stated that the account was only meant to protect his wife's funds. Additionally, the evidence presented at the hearing showed that Overboe did not hold the WSB trust account in a fiduciary capacity; the records of the account showed that all deposits in the account were comprised of funds Overboe, and not his wife, had received. Based on Overboe's statements and the evidence presented at the hearing, we conclude that the referee's findings that Overboe made misrepresentations to and failed to cooperate with the Director were supported by evidence and were not clearly erroneous. Thus, we conclude that Overboe violated Minn. R. Prof. Conduct 8.1(a) and 8.4(c), and Rule 25, RLPR.

## IV.

 Having concluded that Overboe violated the Minnesota and North Dakota professional responsibility rules, we must now determine the appropriate sanc-

7. The Comment to Rule 8.1 states:
 it is a separate professional offense for a lawyer to knowingly make a misrepresentation or omission in connection with a disciplinary investigation of the lawyer's own conduct. Paragraph (b) of this rule also requires correction of any prior misstate-

ment in the matter that the applicant or lawyer may have made and affirmative clarification of any misunderstanding on the part of the admissions or disciplinary authority of which the person involved becomes aware.

tion to be imposed. The referee recommended that Overboe be suspended from the practice of law and be ineligible to apply for reinstatement for a minimum of 1 year. While we give a great deal of deference to a referee's findings, "we retain the final responsibility for determining the appropriate sanction." *Nelson*, 733 N.W.2d at 463. When determining the appropriate sanction, "we consider four factors: (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *Id.* We look to similar cases for guidance in determining the appropriate sanction, but sanctions must be " 'determined on a case-by-case basis by examining the acts of misconduct and considering both aggravating and mitigating circumstances.' " *Id.* at 463–64 (quoting *In re Mayrand*, 723 N.W.2d 261, 268 (Minn.2006)). Aggravating circumstances may include, but are not limited to, such factors as an attorney's prior discipline, unwillingness to recognize the wrongfulness of his conduct, and substantial experience. *In re Holker*, 730 N.W.2d 768, 775 (2007).

*Aggravating Factors*

██ "[W]e consider a lawyer's prior discipline and professional misconduct when determining the appropriate discipline for new misconduct" and "generally impose 'more severe sanctions when the current misconduct is similar to misconduct for which the attorney has already been disciplined.' " *In re Rhodes*, 740 N.W.2d 574, 580 (Minn.2007) (quoting *In re Brooks*, 696 N.W.2d 84, 88 (Minn.2005)). Overboe was subject to discipline twice before. Overboe's prior misconduct involved misuse of a client trust account as

well as dishonesty, misrepresentations, and false statements. *Overboe*, 417 N.W.2d at 853; *Overboe*, 403 N.W.2d at 1–3. Overboe's prior misconduct and its similarity to his current misconduct are aggravating factors in this case.

Overboe's "failure to acknowledge or express remorse for" his misconduct, *Nathan*, 671 N.W.2d at 585, as well as his "substantial experience" as a lawyer, *Holker*, 730 N.W.2d at 775, both constitute aggravating factors in this case. Moreover, Overboe admits that when he receives client funds in check form he does not deposit the checks into a trust account but instead keeps them in a desk drawer and deposits them as he needs them.[8] This practice is a violation of Minn. R. Prof. Conduct 1.15 and N.D. R. Prof. Conduct 1.15, which both require that a lawyer keep property of clients separate from the lawyer's own property. The Minnesota rule and the Comments to the North Dakota rule further state that client money must be kept in one or more trust accounts. Minn. R. Prof. Conduct 1.15(a); N.D. R. Prof. Conduct 1.15, Comment 1; *see In re Mayrand*, 723 N.W.2d 261, 266–67 (Minn.2006). Thus, we conclude that Overboe's violation of Rule 1.15 is an aggravating factor in this case.

*Mitigating Factors*

We have considered the absence of harm to clients to be a mitigating factor in discipline cases. *In re Ray*, 452 N.W.2d 689, 694 (Minn.1990). The referee found that no clients were harmed here. But we do not consider the lack of client harm a mitigating factor in this case because Overboe's commingling of personal and client funds put his client funds at risk of attach-

---

8. Respondent's brief states: "Overboe argues that to require an attorney to deposit a small retainer into a trust account and maintain those ledgers and then take the money back out after the work is done when the work is done in a short period time [sic] is burdensome and an unnecessary amount of paperwork which accomplishes nothing."

ment by Overboe's judgment creditors. *See In re Haugen,* 543 N.W.2d 372, 374 (Minn.1996.)

*Relevant Case Law*

 In *In re Kinnunen we* stated: misuse of trust accounts will almost invariably result in lengthy suspension at the very least and disbarment at worst. Moreover, an attorney's responsibility to maintain his or her trust account goes beyond a requirement to refrain from intentional wrongdoing; even unintentional misappropriation as the result of poor accounting practices may be grounds for discipline.

502 N.W.2d 773, 775 (Minn.1993) (internal citations omitted). But when no aggravating factors are present, or when mitigating factors are present, we have been more lenient in the length of suspensions for trust account violations. For example, in *In re Edinger,* a lawyer had multiple trust account overdrafts and the lawyer used his trust account as a personal account. 700 N.W.2d 462, 464–67 (Minn.2005). While the lawyer made false statements to the Director during the investigation, we ordered suspension for at least 3 months because the trust account violations presented no risk of harm to clients and the lawyer had no prior record of misconduct. *Id.* at 467–69. In *In re Gubbins,* when no clients were harmed by the lawyer's misconduct, we suspended the lawyer for 4 months for failing to keep proper trust account records and for misappropriating client funds without intent to defraud clients. 380 N.W.2d 810, 811–12 (Minn. 1986).

When trust account violations are paired with noncooperation with or misrepresentations to the Director during an investigation and no mitigating factors are present, we have generally imposed more severe sanctions. In *In re Grathwol,* a lawyer had trust account overdrafts, failed to deposit retainers into his trust account, misled and did not cooperate with the Director in the investigation, failed to communicate with a client, and failed to return unearned fees. 574 N.W.2d 70, 70 (Minn.1998). We accepted a stipulated disposition and suspended the lawyer indefinitely for a minimum of 12 months. *Id.* In *In re Bruender,* we again accepted a stipulated disposition and suspended a lawyer for a minimum of 18 months when the lawyer "failed to timely file employee withholding tax returns, had serious irregularities in the management of his trust account, including shortages in the account and commingling personal and client funds," falsely certified that records were properly maintained, and failed to cooperate with the Director in his investigation. 530 N.W.2d 521, 521 (Minn.1995).

Similarly, when a lawyer has been subject to prior discipline, we have generally imposed more severe suspensions. In *In re Haugen,* a lawyer failed to pay court reporter fees and improperly handled his trust account by failing to keep proper records, keeping insufficient funds in the account, commingling earned legal fees with client funds, paying for personal and business expenses from his client trust account, and falsely certifying to this court that his books and records were maintained properly. 543 N.W.2d at 374. While no clients were harmed, the referee in that case concluded that all the client funds in the account were at risk because of the trust account violations. *Id.* Further, in light of the fact that the lawyer had been practicing for 40 years, his trust account violations and his "failure to comprehend the trust fund accounting requirements [made] it highly probable that future violations [would] occur." *Id.* The lawyer had also been subject to prior discipline for similar trust account violations. *Id.* at 375. Based on the above findings,

we suspended the lawyer from the practice of law for a minimum of 12 months. *Id.*

In this case, Overboe's misconduct involved trust account violations for two separate bank accounts—the IOLTA account and the WSB trust account. This alone is grounds for a lengthy suspension. But unlike in *Edinger* and *Gubbins*, where we imposed 3 and 4 month suspensions respectively, there are several aggravating factors in this case. Here, as in *Haugen*, where we imposed a 12 month suspension, Overboe was previously disciplined for similar misconduct. Further, while no clients were harmed by Overboe's conduct, his trust account violations put his clients' funds at risk because of the $1.4 million unpaid judgment against him. Additionally, we conclude that in light of Overboe's decades of experience, his failure to properly maintain trust accounts, his unwillingness to recognize the wrongfulness of his conduct, and his continued failure to place client retainers in a trust account, it is "highly probable that future violations will occur." *Haugen*, 543 N.W.2d at 374.

Accordingly, we order that:

1. David A. Overboe be suspended from the practice of law in the State of Minnesota, effectively immediately, and is ineligible to petition for reinstatement for a minimum of 1 year.

2. If Overboe seeks reinstatement, he must comply with the requirements of Rule 18 of the Minnesota Rules of Lawyers Professional Responsibility.

3. Overboe shall comply with the requirements of Rule 26 of the Minnesota Rules of Lawyers Professional Responsibility.

4. Overboe shall pay the Director $900 in costs plus disbursements pursuant to Rule 24 of the Minnesota Rules of Lawyers Professional Responsibility.

So ordered.

DIETZEN, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.