In re Petition for DISCIPLINARY ACTION AGAINST Brian Louis PITERA, a Minnesota Attorney, Registration No. 298475.

No. A12–0274.

Supreme Court of Minnesota.

March 6, 2013.

Martin A. Cole, Director, Joshua H. Brand, Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, MN, for petitioner.

Brian Louis Pitera, Saint Cloud, MN, pro se.

## OPINION

### PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) seeks disciplinary action against respondent Brian Louis Pitera, a Minnesota attorney. The most serious misconduct alleged by the Director arises from Pitera's conviction of first-degree felony assault. The Director also alleges that Pitera engaged in professional misconduct by failing to (1) pay a law-related judgment, (2) appear at a hearing, (3) communicate his anticipated absence at that hearing to the district court or his client, (4) refund any portion of an unreasonable fee, and (5) cooperate with the disciplinary process.

Pitera was admitted to the practice of law on December 29, 1999, and the Director has disciplined him on one previous occasion. On January 10, 2005, the Director placed Pitera on private probation for 2 years because he accepted representation of a client and appeared in district court three times on that client's behalf while suspended from the practice of law for nonpayment of his lawyer registration fee. Pitera also failed to communicate his suspension to the client, appear in court for the client's trial, or cooperate with the Director's disciplinary investigation.

The Director served Pitera with the present disciplinary petition on February 9, 2012. Pitera did not respond to the Director's petition, and we deemed the allegations contained therein admitted, pursuant to Rule 13(b), Rules on Lawyers Professional Responsibility (RLPR). The serious nature of Pitera's admitted misconduct compels our conclusion that disbarment is the appropriate sanction.

## I.

Because we deemed the allegations in the Director's disciplinary petition admitted, the sole question before us is the appropriate discipline to impose for Pitera's misconduct. We summarize that misconduct below.

### The Felony Assault Matter

On or about December 25, 2010, Pitera assaulted and seriously injured his roommate. On August 1, 2011, Pitera pleaded guilty to first-degree felony assault, Minn. Stat. § 609.221, subd. 1 (2012), and the district court sentenced him to 75 months in prison. Pitera violated Minn. R. Prof. Conduct 8.4(b) because of his conviction of a felony offense.[1]

### K.G. Matter

K.G. was charged with two felony narcotics offenses. K.G.'s father paid Pitera a flat fee of $2,000 to represent his son at trial. Pitera appeared in court two or three times on K.G.'s behalf, but subsequently failed to appear at a scheduled hearing on August 8, 2011. Pitera did not

1. Minnesota Rule of Professional Conduct 8.4(b) states: "It is professional misconduct for a lawyer to ... commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects."

notify K.G., the prosecutor, or the judge of his absence, and the court rescheduled the hearing as a result. Thereafter, K.G. repeatedly tried to contact Pitera to no avail. Despite failing to represent K.G. through trial, Pitera has not returned any portion of the $2,000 fee. Pitera's neglect of the K.G. matter and failure to refund an unearned fee violated Minn. R. Prof. Conduct 1.3, 1.4(b), 1.5(a), 3.2, 3.4(c), and 8.4(d).[2]

*Dr. T.H.E. Matter*

Pitera represented a client who was involved in a personal injury action. Prior to the representation, Dr. T.H.E. ("the doctor") provided post-accident chiropractic services to Pitera's client. On June 7, 2000, Pitera requested that the doctor draft a narrative report that described the client's injuries. He also asked the doctor to send him the client's medical records. Pitera informed the doctor in writing that all charges for the requested information would be paid by his office upon "receipt of an invoice." The doctor drafted the narrative report and provided it to Pitera, along with the requested medical records, in July 2000.

Pitera never paid the doctor for the report or records, and he did not cooperate with the doctor's attempts to collect the debt. On October 1, 2002, the doctor obtained a $421.71 judgment against Pitera. Pitera never paid the judgment. The doctor eventually retained an attorney to assist him in recovering the 2002 judgment and took various steps to collect on the judgment, all of which were unsuccessful. Pitera has not paid, and has made no progress toward paying, the judgment. Pitera's failure to pay the judgment violated Minn. R. Prof. Conduct 8.4(d).

*Failure to Cooperate*

The doctor filed an ethics complaint against Pitera. On October 18, 2010, the Director sent Pitera notice of the investigation into the doctor's complaint. Pitera timely responded to the initial complaint, but failed to respond to the Director's five subsequent requests for information over a 3-month period. Similarly, Pitera failed to respond to requests for information from the Director regarding his conviction of first-degree felony assault. He also failed to respond to the ethics complaint filed against him arising out of the K.G. matter or any of the Director's requests for information about Pitera's failure to appear at K.G.'s August 8, 2011 hearing. Pitera's failure to cooperate with the disciplinary investigation violated Minn. R. Prof. Conduct 8.1(b) and Rule 25, RLPR.[3]

2. Minnesota Rule of Professional Conduct 1.3 states: "A lawyer shall act with reasonable diligence and promptness in representing a client." Minnesota Rule of Professional Conduct 1.4(b) states: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Minnesota Rule of Professional Conduct 1.5(a) states, in relevant part: "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." Minnesota Rule of Professional Conduct 3.2 states: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Minnesota Rule of Professional Conduct 3.4(c) states, in relevant part: "A lawyer shall not ... knowingly disobey an obligation un-

der the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Minnesota Rule of Professional Conduct 8.4(d) states: "It is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice."

3. Minnesota Rule of Professional Conduct 8.1(b) states, in relevant part: "[A] lawyer in connection ... with a disciplinary matter shall not ... fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority." Rule 25, RLPR, states: "It shall be the duty of any lawyer who is the

## II.

■ The sole question before us is the appropriate discipline to impose on Pitera because the allegations in the petition are deemed admitted. *In re Rymanowski,* 809 N.W.2d 217, 224 (Minn.2012). The purpose of disciplinary sanctions for professional misconduct is "not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Rebeau,* 787 N.W.2d 168, 173 (Minn. 2010) (citations omitted). The four factors that guide our imposition of discipline are "the nature of the misconduct, the cumulative weight of the disciplinary violations, the harm to the public, and the harm to the legal profession." *In re Lundeen,* 811 N.W.2d 602, 608 (Minn.2012) (citation omitted). We also consider aggravating and mitigating circumstances. *Id.* We look to similar cases for guidance, but ultimately tailor discipline to the specific facts of each case. *Id.*

### The Nature of the Misconduct

■ We first consider the nature of Pitera's misconduct. Minnesota Rule of Professional Conduct 8.4(b) states that an attorney commits professional misconduct by committing "a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." We generally view "felony convictions as serious misconduct," and we are more likely to disbar "[w]hen a lawyer's felony criminal misconduct occurs within the practice of law." *In re Perez,* 688

N.W.2d 562, 567, 569 (Minn.2004). When an attorney commits criminal conduct unrelated to the practice of law, however, "[w]e have typically imposed suspensions or public reprimands." *In re Farley,* 771 N.W.2d 857, 864 (Minn.2009). Nonetheless, we have occasionally disbarred attorneys for engaging in "criminal conduct unrelated to the practice [of] law, including serious drug-related offenses, crimes of violence, and acts involving dishonesty."[4] *Id.* at 864–65.

■ Here, the district court convicted Pitera of first-degree felony assault and sentenced him to 75 months' imprisonment. Nothing in the record suggests that Pitera's criminal conduct was related to the practice of law. First-degree assault is a serious crime of violence, however, and we have disbarred attorneys who were convicted of felony-level crimes of violence and subject to extended incarceration. *See In re Biber,* 791 N.W.2d 132, 132 (Minn.2010) (disbarring attorney who was convicted of first-degree criminal sexual conduct); *In re Thompson,* 296 Minn. 466, 467–69, 209 N.W.2d 412, 413–14 (Minn. 1973) (disbarring attorney who was convicted of first-degree murder). We have also imposed an indefinite suspension for at least 5 years on an attorney whose underlying criminal conduct involved two acts of violence. *See In re Gherity,* 673 N.W.2d 474, 476 (Minn.2004). In *Gherity,* an attorney with an extensive disciplinary history was convicted of both fifth-degree assault and disorderly conduct and sentenced to a short term of imprisonment.[5]

subject of an investigation or proceeding under these Rules to cooperate with the District Committee, the Director, or the Director's staff, the Board, or a Panel, by complying with reasonable requests...."

**4.** We have long "indicated a willingness to evaluate felony convictions individually and approve sanctions less than disbarment for a

lawyer convicted of a felony" unrelated to the practice of law. *In re Kimmel,* 322 N.W.2d 224, 225 (Minn.1982).

**5.** The district court sentenced Gherity to 90 days' confinement, 75 days of which were stayed so long as he complied with certain conditions of his sentence. *See id.* at 476.

*Id.* Gherity's violent misconduct arose from a domestic incident in which he "repeatedly kick[ed]" his girlfriend and then proceeded to punch a neighbor multiple times when the neighbor attempted to intervene. *Id.*

Pitera's assault of his roommate is more serious than the underlying criminal conduct at issue in *Gherity.* First-degree felony assault requires the infliction of "great bodily harm" on the victim. Minn.Stat. § 609.221, subd. 1. Minnesota law defines "great bodily harm" as "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm." Minn.Stat. § 609.02, subd. 8 (2012). Therefore, by pleading guilty to the commission of first-degree felony assault, Pitera admitted that his violent misconduct inflicted an extremely grave injury on his victim. Indeed, under the Minnesota Sentencing Guidelines, first-degree felony assault ranks as a severity-level nine offense out of eleven severity levels, and the presumptive sentence for an individual convicted of first-degree felony assault with a criminal history score of zero is 86 months. Minn. Sent. Guidelines 4, 5; *see also Farley,* 771 N.W.2d at 864–65 (considering offense severity level in assessing the appropriate discipline for an attorney convicted of a felony unrelated to the practice of law). Accordingly, because first-degree felony assault is a serious crime of violence, we view Pitera's criminal misconduct as warranting significant discipline.

Moreover, Pitera's conviction of first-degree felony assault does not stand alone. Pitera engaged in client-related misconduct by neglecting the K.G. matter. We have suspended or disbarred attorneys "[e]ven in cases where an attorney is involved in only one instance of client neglect, when that neglect is combined with other violations." *In re Geiger,* 621 N.W.2d 16, 23 (Minn.2001). Pitera's neglect of the K.G. matter violated several rules of professional conduct, including Rules 1.3 (diligence), 1.4 (communicating with clients), 3.2 (expediting litigation), 3.4(c) (knowingly disobeying an "obligation under the rules of a tribunal") and 8.4(d) (engaging in "conduct prejudicial to the administration of justice").

Pitera also failed to pay a law-related judgment that he incurred on behalf of a client. We have stated that "[f]ailure to pay a professionally incurred debt constitutes conduct prejudicial to the administration of justice." *In re Swokowski,* 796 N.W.2d 317, 326 (Minn.2011). Pitera never paid the doctor for the services he performed at Pitera's request. Most significantly, more than a decade after incurring the debt, Pitera has completely failed to cooperate with the doctor's attempts to collect the money that he is rightfully owed.

Finally, Pitera failed to cooperate with the disciplinary process. We have repeatedly stated that "noncooperation with the disciplinary process, by itself, may warrant indefinite suspension and, when it exists in connection with other misconduct, noncooperation increases the severity of the disciplinary sanction." *In re Nelson,* 733 N.W.2d 458, 464 (Minn.2007). Pitera has failed to respond to nearly every communication from the Director regarding the disciplinary investigation into the Dr. T.H.E. matter, his conviction of first-degree felony assault, and the K.G. matter.

*Cumulative Weight of the Disciplinary Violations*

▮ We must next consider the cumulative weight of Pitera's disciplinary violations. "[T]he cumulative weight and severity of multiple disciplinary rule vio-

lations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn.2004). As we have explained, Pitera's conviction of first-degree felony assault—a serious crime of violence—is a significant violation of the Minnesota Rules of Professional Conduct. When combined with Pitera's other rule violations—especially his client-related misconduct and failure to cooperate—the cumulative weight of Pitera's misconduct counsels in favor of serious discipline.

*Harm to the Public and the Legal Profession*

■ In determining the proper discipline to impose, we consider the harm to the public and the legal profession. Pitera's professional misconduct harmed the public and the profession in several ways. First, Pitera's conviction for a felony-level crime of violence undermines the public's confidence in the ability of attorneys to abide by the rule of law. *See Oberhauser*, 679 N.W.2d at 159–60 (holding that an attorney who committed a felony "caused harm to the public's confidence in and regard for the legal profession"). Second, Pitera's neglect of the K.G. matter not only harmed his client in that case, but also damaged the public's perception of the integrity of the legal system and the lawyers who are essential to its functioning. *See In re Albrecht*, 779 N.W.2d 530, 542 (Minn.2010) (noting that client neglect harms the public and legal profession). Third, Pitera's failure to pay a professionally incurred debt harmed the doctor by causing him to expend substantial resources to recover money that was owed to him. Moreover, Pitera's disregard of the 2002 judgment wasted judicial time and resources by forcing the doctor to seek a writ of execution several years after the debt was incurred. *See Swokowski*, 796

N.W.2d at 326 (noting that failure to pay a professionally incurred debt is conduct that is "prejudicial to the administration of justice"). Finally, Pitera's failure to cooperate with the Director's disciplinary investigation weakens the public's perception of the legal profession's ability to self-regulate. *See In re Letourneau*, 792 N.W.2d 444, 453 (Minn.2011) (holding that "[l]ack of cooperation with a disciplinary investigation" harms the legal profession by undermining the integrity of the lawyer disciplinary system (citations omitted)).

*Aggravating and Mitigating Circumstances*

■ We also consider aggravating and mitigating circumstances when determining the appropriate discipline for attorney misconduct. Pitera's prior disciplinary history is an aggravating factor. *See Lundeen*, 811 N.W.2d at 609. Furthermore, "we generally impose more severe sanctions when the current misconduct is similar to the misconduct for which an attorney has already been disciplined." *Id.* Pitera's misconduct in the K.G. matter is almost identical to the misconduct that previously led the Director to place him on private probation for 2 years.

The Director also argues that Pitera's failure to refund any portion of an unearned fee to K.G. is an aggravating factor. We disagree. The Director argues that we have, in the past, considered an attorney's failure to promptly return unearned fees as an aggravating factor. *See In re Roggeman*, 779 N.W.2d 520, 528 (Minn.2010). However, in *Roggeman*, the referee specifically found that the attorney was indifferent to making restitution and concluded that such indifference was an aggravating factor, and we held that the record supported the referee's finding and conclusion. *Id.* at 525–27. By contrast, in this case we have neither a finding nor a

conclusion that Pitera was indifferent in refunding the unearned fee to K.G.'s father. Moreover, we have already considered Pitera's failure to refund the unearned fee in assessing the nature of his misconduct. Under the circumstances presented here, Pitera's failure to refund an unearned fee is not an aggravating factor, particularly given that we already have considered the underlying misconduct.

Finally, Pitera has provided no evidence of mitigating circumstances. To be sure, the record suggests that Pitera contacted the Director at one point during the disciplinary process and claimed that he had not timely responded to a request for information because he was in an unspecified "treatment facility." However, we have held that "an attorney offering a physical or psychological disability as a mitigating factor has the burden of presenting clear and convincing evidence of the disability." *In re Merlin*, 572 N.W.2d 737, 741 (Minn. 1998). Here, Pitera's failures to cooperate with the disciplinary process are many and continuous, and there is no evidence in the record to explain either why Pitera entered a treatment facility or whether he has a physical or psychological disability.

The appropriate sanction for Pitera's misconduct is disbarment. Therefore, we order that, upon the filing of this opinion, respondent Brian Louis Pitera be disbarred from the practice of law in the State of Minnesota. We further order that Pitera comply with Rule 26, RLPR, and pay $900 in costs, pursuant to Rule 24, RLPR.

Disbarred.