STATE OF MINNESOTA

IN SUPREME COURT

A13-2307

Original Jurisdiction                                                           Per Curiam


In re Petition for Disciplinary Action
against Linda A. Brost, a Minnesota                                   Filed:  July 23, 2014
Attorney, Registration No. 182692.                          Office of Appellate Courts

_____

Martin A. Cole, Director, Megan Engelhardt, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Linda A. Brost, Saint Paul, Minnesota, pro se.

_____

S Y L L A B U S

Where respondent stole $43,000 from client, stole the same client's identity, and failed to cooperate with a disciplinary investigation, the appropriate discipline is disbarment.

Disbarred.

O P I N I O N

PER CURIAM.

On December 16, 2013, the Director of the Office of Lawyers Professional Responsibility (OLPR) filed a petition for disciplinary action against Linda A. Brost. The petition alleged that Brost engaged in professional misconduct when she committed theft by swindle and identity theft, stealing approximately $43,000 from a client. The

1

petition also alleged that Brost failed to cooperate in the Director's disciplinary investigation. Brost did not respond to the petition. By order filed on February 5, 2014, we deemed all allegations in the petition for disciplinary action admitted. The only issue in this case is what discipline to impose. The Director seeks disbarment.

## I.

Respondent, Linda A. Brost, was admitted to practice law in Minnesota on October 12, 1987. Brost was indefinitely suspended on March 31, 2009, for using the expired notary stamp of a deceased notary to fraudulently notarize her own signature on a certificate of trust prepared for a client, submitting the fraudulent document to a bank, and failing to cooperate with the Director's investigation, in violation of Minn. R. Prof. Conduct 8.1(a), 8.1(b),[1] 8.4(c)[2] and 8.4(d),[3] and Rule 25, Rules on Lawyers Professional

---

[1]    Minnesota Rule of Professional Conduct 8.1 states:

[A] lawyer . . . in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority.

[2]    Minnesota Rule of Professional Conduct 8.4(c) makes it professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

[3]    Minnesota Rule of Professional Conduct 8.4(d) makes it professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice."

Responsibility (RLPR).[4] *In re Brost*, 763 N.W.2d 637, 638 (Minn. 2009). Brost remains suspended. The Director now seeks disbarment for Brost's theft of $43,000, Brost's identity theft, and Brost's non-cooperation with the Director's investigation.[5]

A. *Theft by Swindle and Identity Theft*

Brost's theft arose from her representation of A.F., which dates back to 1993 when Brost drafted a will for A.F. Two friends of A.F. were each to receive gifts of $10,000 upon A.F.'s death and A.F.'s remaining assets were to be evenly distributed to the Church of St. Francis De Sales of St. Paul and Shriners Hospital, Twin Cities Unit. A.F. died in September 2005. When A.F. passed away, he owned two annuity policies he had purchased from Jackson National Life Insurance in 1997. His two friends were beneficiaries of one policy and his estate was the beneficiary of the other policy.

Brost knowingly and intentionally devised a scheme to avoid reporting A.F.'s two annuities to A.F.'s estate during probate. Between March 31, 2011, and March 31, 2012,

---

[4] Rule 25(a), RLPR, provides that "[i]t shall be the duty of any lawyer who is the subject of an investigation or proceeding under these Rules to cooperate with the . . . Director . . . by complying with reasonable requests, including requests to . . . [f]urnish in writing a full and complete explanation covering the matter under consideration."

[5] The Director also alleges that Brost made false statements to the Director in a 2008 disciplinary investigation deposition. The Director states that during the deposition, the Director asked Brost, "What life insurance policies did [A.F.] have?" Brost answered "None." The Director alleges that this testimony violates Rules 8.1(b) and 8.4(c). The Director argues that Brost's misconduct involved dishonesty during a disciplinary investigation because Brost knew that A.F. owned two annuity policies issued by Jackson National Life Insurance. Neither the deposition specifically nor the record more generally clearly link the two annuities with the deposition inquiry about life insurance policies. Because our ultimate decision on discipline does not depend on resolving the ambiguity surrounding the life insurance deposition question, we choose not to address count two in the disciplinary proceeding.

3

Brost cashed or collected monthly annuity payments from A.F.'s annuities. In early 2012, Brost, pretending to be A.F., surrendered one of the two annuities for a cash payment of $28,641.60. Brost stole a total of approximately $43,000.

Based on this conduct, Brost was charged with six felonies, including theft by swindle, identity theft, aggravated forgery, and insurance fraud. In July 2013, Brost pleaded guilty and was later convicted of one count of theft by swindle, in violation of Minn. Stat. § 609.52, subd. 2(4) (2012), and one count of identity theft, in violation of Minn. Stat. § 609.527, subd. 2 (2012), both felonies. The Director alleges this conduct violated Minn. R. Prof. Conduct 8.4(b)[6] and (c), which make it professional misconduct to commit a criminal act that reflects dishonesty or to engage in dishonest, fraudulent, or deceitful conduct.

## B. Non-Cooperation with the Director's Investigation

In April 2013 a former client of Brost's filed a complaint with the Director alleging that Brost had engaged in professional misconduct. The Director mailed a notice of investigation to Brost on May 14, 2013, directing Brost to provide the former client and the Director with a written response within 14 days. Brost did not provide a response. The Director sent letters on May 31, 2013, June 20, 2013, and July 22, 2013, to Brost's Saint Paul address, which was her address of record with the Minnesota Attorney Registration System. In these letters, the Director continued to advise Brost that failing

---

[6] Rule 8.4(b) states that "It is professional misconduct for a lawyer to: . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects."

4

to respond may constitute a separate disciplinary offense. The Director also sent a letter to Brost's secondary address in Wisconsin, advising her that the Director had not received her response to the notice of investigation and that failure to respond may constitute a separate disciplinary offense. Brost failed to respond to any of the letters sent by the Director.

After Brost pleaded guilty to the theft of A.F.'s annuity payments, the Director mailed a notice to Brost's Saint Paul address on July 30, 2013, of a new investigation regarding Brost's criminal matter and requesting a complete written explanation within two weeks. The Director sent additional letters regarding the investigation to Brost's Saint Paul and Wisconsin addresses on August 15, 2013, September 12, 2013, and October 3, 2013. Brost failed to respond. Although none of the letters sent by the Director were returned as undeliverable, the Director has not received any communication from Brost regarding the alleged misconduct. The Director alleges that this failure to cooperate violates Minn. R. Prof. Conduct 8.1(b) and Rule 25, RLPR, which require cooperation with the Director during a disciplinary investigation.

Brost was personally served with the petition for disciplinary action on December 6, 2013. Brost failed to respond to the petition. Based on Brost's failure to respond, the Director filed a motion for summary relief requesting the court deem all allegations in the petition admitted pursuant to Rule 13(b), RLPR.[7] We issued an order directing that all

---

[7] Rule 13(b), RLPR, states that "[i]f the respondent fails to file an answer within the time provided or any extension of time this Court may grant, the allegations shall be deemed admitted."

5

allegations contained in the petition for disciplinary action are deemed admitted. *See* Rule 13(b), RLPR; *see also In re Vaught*, 693 N.W.2d 886, 890 (Minn. 2005) ("[U]nder the RLPR and our case law, when an attorney subject to disciplinary proceedings fails to file an answer within the time provided, the allegations set forth in the petition shall be deemed admitted."). Furthermore, Brost's criminal convictions are conclusive evidence that Brost committed theft by swindle and identity theft. Rule 19(a), RLPR ("A lawyer's criminal conviction . . . [is] conclusive evidence that the lawyer committed the conduct for which the lawyer was convicted."). Based on the foregoing misconduct, we determine that Brost violated Minn. R. Prof. Conduct 8.1(b), 8.4(b), 8.4(c), and Rule 25, RLPR. Thus, the only issue before us is the appropriate discipline to impose for an attorney who stole over $43,000 from a client, stole her client's identity, and failed to cooperate with the Director's investigation.

II.

The purpose of discipline for professional misconduct is "not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010). The four factors that guide this court's imposition of discipline are: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *In re Fru*, 829 N.W.2d 379, 388 (Minn. 2013) (citation omitted) (internal quotation marks omitted). Aggravating and mitigating circumstances are also considered.

6

*Id.* This court looks to past cases for guidance as to the discipline to impose, but the discipline is tailored to the specific facts of each case. *Id.*

A. *Nature of the Misconduct*

An attorney's felony conviction for theft, fraud, or embezzlement has long been treated as serious professional misconduct that often warrants disbarment, "particularly where the criminal conduct occurs . . . within the practice of law." *In re Andrade*, 736 N.W.2d 603, 605 (Minn. 2007); *see also In re Perez*, 688 N.W.2d 562, 567-69 (Minn. 2004); *In re Ossanna*, 288 Minn. 541, 180 N.W.2d 260 (1970). However, "felony convictions do not result in automatic disbarment." *In re Hedlund*, 293 N.W.2d 63, 67 (Minn. 1980) (citing *In re Scholle*, 274 N.W.2d 112 (Minn. 1978)). We will "look at the circumstances surrounding the criminal act to see whether some discipline less than disbarment would be appropriate." *Id.* at 66.

Brost's theft of $43,000 through the collection of A.F.'s annuity payments was serious misconduct, and it occurred within the practice of law.[8] Her misconduct directly stemmed from her relationship with her former client, A.F. The presumptive discipline for misappropriation of client funds is disbarment, unless there are substantial mitigating circumstances. *In re Jones*, 834 N.W.2d 671, 681 (Minn. 2013). We have disbarred

---

[8] In addition to constituting criminal conduct, Brost's actions constituted misappropriation of client funds. Misappropriation "occurs whenever funds belonging to a client are not deposited in a trust account and are used for any purpose other than that specified by the client." *In re Lundeen*, 811 N.W.2d 602, 608 (Minn. 2012) (citation omitted) (internal quotation marks omitted). Here, Brost failed to disclose the annuities to the estate, and she used the annuity payments for her own benefit instead of placing the funds in a client trust account.

7

attorneys for misappropriating far less than $40,000 of client funds. *See, e.g.*, *In re Hummel*, 839 N.W.2d 78, 81-82 (Minn. 2013) (disbarring attorney who misappropriated more than $10,000 in client funds, failed to maintain required trust account records, made false statements to the Director, and failed to cooperate); *In re Lundeen*, 811 N.W.2d 602, 608-09 (Minn. 2012) (disbarring attorney who misappropriated more than $7,800 of client funds). Brost has not offered any mitigating factors.

Brost also failed to cooperate with the disciplinary investigation, in violation of Minn. R. Prof. Conduct 8.1(b) and Rule 25, RLPR. The "noncooperation with the disciplinary process, by itself, may warrant indefinite suspension and, when it exists in connection with other misconduct, noncooperation increases the severity of the disciplinary sanction." *In re Nelson*, 733 N.W.2d 458, 464 (Minn. 2007). Here, Brost failed to cooperate with the disciplinary proceeding by failing to respond to lawful demands for information from the OLPR. We consider this lack of cooperation in conjunction with Brost's other misconduct and determine that it increases the severity of her discipline.

## B. Cumulative Weight of the Violations

Having identified Brost's misconduct, we next consider the cumulative weight of Brost's professional misconduct. The severity and cumulative weight of multiple disciplinary rule violations "may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004). Misconduct that includes multiple rule violations and persists over time is more serious than "single isolated incident[s]" or "brief lapse[s] in

8

judgment." *In re Albrecht*, 845 N.W.2d 184, 192 (Minn. 2014) (alteration in original); *see also In re Rooney*, 709 N.W.2d 263, 266, 269 (Minn. 2006) (concluding that 17 instances of misappropriation totaling $27,700 over a year did not constitute "a single, isolated incident or a brief lapse in judgment").

In this case, Brost engaged in multiple acts of misconduct that individually warrant discipline and add cumulative weight to the misconduct. *See In re Houge*, 764 N.W.2d 328, 338 (Minn. 2009) (determining that a pattern of misconduct and baseless attempts to delay disciplinary proceedings add weight to the cumulative impact of an attorney's violations). Brost's theft shows serious misconduct that was repeated over time as she collected A.F.'s annuity payments over the course of an entire year. In addition to violating Minn. R. Prof. Conduct 8.4(b) and (c) by stealing A.F.'s money and identity, Brost also violated Rule 8.1(b) by failing to cooperate with the Director's investigation.

Failing to cooperate with the investigation "warrants indefinite suspension on its own" as well as "increases the sanction imposed when accompanied by other misconduct." *In re Ulanowski*, 800 N.W.2d 785, 800 (Minn. 2011); *see also In re Nelson*, 733 N.W.2d at 464 (stating that noncooperation with the disciplinary process increases the severity of the disciplinary sanction). Brost's multiple acts of misconduct committed over a period of time weigh in favor of more serious discipline.

*C. Harm to the Public and the Legal Profession*

We also consider the harm the attorney's misconduct caused to the public and to the legal profession when determining the proper discipline to impose. This includes

consideration of "the number of clients harmed and the extent of the clients' injuries." *In re Coleman*, 793 N.W.2d 296, 308 (Minn. 2011) (citation omitted) (internal quotation marks omitted). Although Brost stole from only one client, she defrauded the estate of her client and her client's rightful heirs out of $43,000. Brost's felony convictions for stealing from her client caused harm to the public's regard for the legal profession and undermined the public's confidence in the ability of attorneys to abide by the rule of law. *See In re Pitera*, 827 N.W.2d 207, 212 (Minn. 2013); *In re Oberhauser*, 679 N.W.2d at 159-60. Furthermore, the misuse of funds is a " 'breach of trust that reflects poorly on the entire legal profession and erodes the public's confidence in lawyers.' " *In re Harrigan*, 841 N.W.2d 624, 630 (Minn. 2014) (quoting *In re Rooney*, 709 N.W.2d at 270).

Failure to cooperate with the disciplinary investigation also "harm[s] the legal profession by undermining the integrity of the attorney disciplinary system." *In re Ulanowski*, 834 N.W.2d 697, 703 (Minn. 2013). Failure to cooperate also "weakens the public's perception of the legal profession's ability to self-regulate." *In re Pitera*, 827 N.W.2d at 212. Thus, it is clear that Brost's misconduct harmed the public and the legal profession in multiple ways.

### D. Aggravating and Mitigating Circumstances

Felony convictions reflect serious misconduct. Attorneys who have not been disbarred for convictions for theft, fraud, or embezzlement have presented substantial mitigating factors. *See, e.g.*, *In re Daffer*, 344 N.W.2d 382, 385-86 (Minn. 1984); *In re*

*Olkon*, 324 N.W.2d 192, 196 (Minn. 1982); *In re Scallen*, 269 N.W.2d 834, 841-42 (Minn. 1978).  Brost has failed to present any mitigating factors.

In addition to the absence of mitigating factors, there are aggravating factors present.   For example, a selfish or dishonest motive, such as permanently misappropriating client funds for personal use, may aggravate the misconduct.  *See In re Garcia*, 792 N.W.2d 434, 443-44 (Minn. 2010) (finding that an attorney demonstrated selfish or dishonest motives when he misappropriated funds to pay country club fees). Here, Brost clearly demonstrated a selfish and dishonest motive because she had no intention of returning any of the stolen funds and meant to permanently deprive A.F.'s estate and heirs of the proceeds from the annuities.

Brost's disciplinary history is also an aggravating factor.  *See In re Rebeau*, 787 N.W.2d at 176.  Brost is currently indefinitely suspended for similar serious misconduct. Brost was suspended for violating Minn. R. Prof. Conduct 8.1(a), 8.1(b), 8.4(c), and 8.4(d), and Rule 25, RLPR.  The rules Brost previously violated are similar to the rules that Brost violated in this matter, and both sets of violations involve dishonest and fraudulent misconduct.  We "generally impose more severe sanctions when the current misconduct is similar to misconduct for which the attorney has already been disciplined." *In re Brooks*, 696 N.W.2d 84, 88 (Minn. 2005).  Brost committed the current acts of misconduct while suspended.  It is clear that Brost's suspension for similar misconduct did not serve as a deterrent to Brost.  In short, Brost's misconduct is aggravated by several factors, and there is no evidence of mitigating circumstances in the record.

11

### III.

Based on the substantial amount of money stolen, the fact that Brost stole the identity of a client, the failure to cooperate with the disciplinary investigation, and aggravating factors including Brost's selfish and dishonest motive and Brost's disciplinary history, we conclude that disbarment is the appropriate discipline in this case. We therefore order that:

1. Respondent Linda A. Brost is disbarred in the State of Minnesota, effective upon the date of the filing of this opinion;

2. Brost shall comply with Rule 26, RLPR (requiring notice of disbarment to clients, opposing counsel, and tribunals); and

3. Brost shall pay to the Director the sum of $900 in costs and disbursements pursuant to Rule 24, RLPR.

Disbarred.