STATE OF MINNESOTA

IN SUPREME COURT

A13-1786

Original Jurisdiction

Per Curiam
Took no part, Chutich, J.

In re Petition for Disciplinary Action against
Michael John Riehm, a Minnesota Attorney,
Registration No. 0296570.

Filed: July 27, 2016
Office of Appellate Courts

_____

Susan M. Humiston, Director, Timothy M. Burke, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Stephen V. Grigsby, Minneapolis, Minnesota, for respondent.

_____

S Y L L A B U S

1.    Respondent unconditionally admitted allegations of professional misconduct as part of the parties' oral stipulation for discipline.

2.    In attorney discipline matters, an attorney may not condition his or her admissions to allegations of misconduct on receiving a specific disposition from the Minnesota Supreme Court.

3.    Respondent's misconduct warrants an indefinite suspension with no right to petition for reinstatement for a minimum of 5 years.

Considered and decided by the court.

1

O P I N I O N

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (the Director) filed two amended petitions for disciplinary action against respondent Michael John Riehm alleging two counts of misconduct: (1) an improper referral and fee-sharing arrangement and (2) a first-degree assault conviction. At a hearing before the referee, Riehm admitted the allegations in the Director's petitions as part of an oral stipulation for discipline, and the parties agreed to recommend that we indefinitely suspend Riehm for a minimum of 5 years. But Riehm now contends that he may withdraw his admissions if we decide not to impose the parties' recommended discipline. We conclude that Riehm unconditionally admitted the Director's allegations of misconduct as part of the oral stipulation; therefore, he cannot now withdraw his admissions. We further hold that, as a matter of law, an attorney may not condition his or her admissions to allegations of misconduct on receiving a particular disposition from our court. Finally, after considering Riehm's admissions and the recommendations of the Director and the referee, we indefinitely suspend Riehm from the practice of law for a minimum of 5 years.

I.

This case has an unusual procedural history. The Director first filed a petition for disciplinary action against Riehm more than 2 years ago. Between then and now, the parties filed two stipulations for discipline, both of which we rejected. The Director also filed two amended petitions for disciplinary action, both of which are now before us.

Additionally, we are presented with the parties' oral stipulation regarding the two most recent petitions, accompanied by an unusual ruling by the referee: an order confirming that the oral stipulation is enforceable. To properly understand the context of this case, a detailed discussion of its procedural history, as well as the allegations of misconduct, is necessary.

*Improper Referral and Fee-Sharing Arrangement*

Riehm's misconduct began with an improper referral and fee-sharing arrangement. Around August 2010 Riehm entered into a secret referral agreement with M.M., an associate at another law firm. Riehm promised to pay M.M. one-third of any attorney fees recovered in matters referred by M.M. M.M. referred over 100 matters to Riehm, and Riehm undertook representation in at least 23 of these matters. Riehm paid M.M. approximately $11,000 in return for the referrals. Although Riehm's retainer agreements with the referred clients stated that Riehm may share attorney fees with another lawyer, the retainer agreements did not disclose Riehm's referral and fee-sharing arrangement with M.M. Additionally, Riehm took steps to prevent M.M.'s firm from learning about the arrangement. Riehm wrote checks for the referral fees payable to M.M. personally, used M.M.'s home address on the checks, delivered the checks personally, and sent communications to M.M.'s personal e-mail account.

Beginning around March 2011 Riehm entered into a similar arrangement with R.D., another associate at M.M.'s firm. Riehm undertook representation of at least one client that R.D. referred, but Riehm did not make any payments to R.D. Riehm's retainer

agreement with the referred client did not disclose that he had agreed to share fees with R.D.

In September 2013 the Director filed a petition for disciplinary action alleging that Riehm had violated Minn. R. Prof. Conduct 8.4(c)[1] by entering into the referral and fee-sharing scheme. The parties immediately filed a stipulation for discipline in which Riehm "unconditionally admit[ted] the allegations of the petition." But the Director's petition did not discuss Riehm's violations of Minn. R. Prof. Conduct 1.5(e),[2] which arose out of the same conduct as the Rule 8.4(c) violations. Accordingly, we ordered the Director to file an amended petition so that we could consider the two rule violations together to better determine the appropriate discipline. *See In re Petition for Review of Panel Decision Against Respondent, Panel Case No. 35104*, 851 N.W.2d 620, 624-26 (Minn. 2014). Because the amended petition would allege an additional rule violation, we rejected the parties' September 2013 stipulation.

---

[1]     Minnesota Rule of Professional Conduct 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

[2]     Minnesota Rule of Professional Conduct 1.5(e) provides:

> A division of a fee between lawyers who are not in the same firm may be made only if
>     (1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;
>     (2) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and
>     (3) the total fee is reasonable.

The Director filed an amended and supplementary petition for discipline in August 2014 ("the first amended petition"), alleging violations of both Rule 8.4(c) and Rule 1.5(e). In November 2014 the parties entered into a second stipulation for discipline. Once again, Riehm "unconditionally admit[ted] the allegations of the amended and supplementary petition." But there was an internal inconsistency within the second stipulation. One of the allegations in the petition, which Riehm unconditionally admitted, was that Riehm had "assisted M.M. in secreting the arrangement from" M.M.'s firm. Yet, the stipulation stated that Riehm "*unknowingly* assisted M.M. in the conduct referenced in the petition." (Emphasis added.) Because of these contradictory statements, we ordered the parties to file memoranda or a new stipulation clarifying whether Riehm admitted to purposefully hiding the referral arrangement from M.M.'s firm. The parties' memoranda expressed conflicting interpretations of the stipulation, and we therefore rejected the second stipulation.

*First-Degree Assault Matter*

During the time period in which we were considering the first stipulation, Riehm committed an assault. In the early morning hours of January 1, 2014, Riehm stabbed a fellow bar patron with a steak knife, puncturing the victim's lung. Riehm was charged with one count of first-degree assault, Minn. Stat. § 609.221, subd. 1 (2014). After a bench trial on stipulated facts, the district court found Riehm guilty and convicted him of the offense.

The presumptive sentence for an individual convicted of first-degree assault with a criminal history score of zero is 86 months. Minn. Sent. Guidelines 4.A. At a

5

June 15, 2015 sentencing hearing, the parties requested that the district court stay Riehm's 86-month sentence for 7 years, during which time Riehm would serve probation. The parties also requested that Riehm serve 365 days in the workhouse and pay $43,503.78 in restitution. The district court imposed the parties' recommended sentence. The district court imposed this downward dispositional departure, in part, because the victim agreed with the terms, Riehm was amenable to probation, and Riehm would be better able to pay restitution to the victim if he was placed on probation rather than imprisoned.

*The Present Phase of the Disciplinary Proceedings*

The Director filed a second amended and supplementary petition for disciplinary action ("the second amended petition") alleging that Riehm had violated Minn. R. Prof. Conduct 8.4(b)[3] by committing the assault. The parties appeared before the referee for a trial on July 13, 2015. Minutes into the trial, Riehm's attorney requested a break to discuss a settlement offer. After a brief recess, the parties indicated that they had orally agreed to a stipulation for discipline.

Due to the procedural history of this case, in which we had rejected two prior stipulations for discipline, the referee decided that the parties' oral stipulation should "be placed on the record" before the referee so the referee could "at least take a look at" the stipulation. The Director represented that the oral stipulation included the following

---

[3] Minnesota Rule of Professional Conduct 8.4(b) provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects."

terms: (1) the parties would recommend that the Minnesota Supreme Court suspend Riehm indefinitely for a minimum of 5 years; (2) because of the "unique procedural history of this matter," the parties would ask the referee to approve their stipulation; (3) Riehm would "admit[] without equivocation the allegations" in the first amended petition and the second amended petition; (4) certain documents from Riehm's criminal proceedings would be made part of the record before the Minnesota Supreme Court; and (5) Riehm would pay $900 in costs. The referee asked Riehm's counsel if he had any response or additions, to which he responded, "No, Your Honor."

The referee then asked "Riehm to personally admit [the allegations] on the record." Riehm took the stand and was administered the oath. The Director presented the first amended petition, paragraphs 1 through 12 of which listed the factual allegations related to the fee-sharing arrangement and paragraph 13 of which stated the rules of professional conduct that Riehm had violated. The Director asked Riehm whether he admitted "each of the allegations in paragraphs 1 through 13" of the first amended petition. Riehm answered, "I do." The Director then presented the second amended petition, which discussed the assault. Riehm similarly admitted all the allegations in the second amended petition.

The referee then asked Riehm whether he had "any questions with regard to the effect of [his] admission at this point." Riehm said no and indicated that he understood the oral stipulation. He also confirmed that he was given sufficient time to speak with his attorney about the stipulation.

7

The referee told the parties that he would approve the oral stipulation for discipline. He asked the Director to "put together a detailed document" describing the stipulation and submit it to the referee so that the referee could issue his recommendation. The Director submitted a draft document to the referee and Riehm's counsel. The draft document contained boilerplate language stating that Riehm waived his "right to a hearing before a referee on the petition" and "to a hearing before the [Minnesota] Supreme Court upon the records, briefs and arguments." It further stated that Riehm

> underst[ood] that based upon these admissions, this Court may impose any of the sanctions set forth in Rule 15(a)(1)-(9), [Rules on Lawyers Professional Responsibility (RLPR)], including making any disposition it deems appropriate. [Riehm] understands that by entering into this stipulation, the Director is not making any representations as to the sanctions the Court will impose.

The parties' two previous stipulations had contained identical language.

On July 17, 2015, the referee responded that the document submitted by the Director correctly stated the terms of the oral stipulation and that the referee planned to "sign off" on the parties' recommended discipline. On July 23, 2015, the Director mailed a final draft of the document to the referee and to Riehm's counsel. In a July 31, 2015 e-mail, Riehm's counsel stated that Riehm would be willing to sign the document if the following condition was added: "The respondent waived his rights to a referee hearing with the understanding that if the Court was not to accept the stipulated sanction of five years suspension, then the matter would proceed to hearing." The Director immediately rejected this condition. The Director subsequently filed a motion to enforce the parties'

8

oral stipulation, arguing that "[t]he complete agreement is on the record" and that a signed document was not a condition precedent to the enforceability of the stipulation.

The referee held a hearing on the Director's motion on August 10, 2015. At the hearing, the Director asked the referee to order Riehm to sign the document. Alternatively, the Director argued that the parties' oral stipulation was recorded in the July 13, 2015 transcript and that Riehm had not stated his proposed condition at that time. Riehm argued that he had understood that he would have a right to withdraw his admissions, similar to the way a criminal defendant may withdraw a guilty plea under certain circumstances.

On August 14, 2015, the referee issued an order granting the Director's motion to enforce the parties' oral stipulation, confirming the stipulation as read into the record during the July 13, 2015 hearing, and recommending that we accept the parties' stipulation and recommendation for discipline. In an accompanying memorandum, the referee stated that the parties' oral stipulation "was placed on the record and confirmed by both counsel as well as [Riehm]" and that "[b]oth petitions for discipline were admitted, in their entirety, by [Riehm]." The referee concluded that, based on the transcript, the terms of the oral stipulation were "clear" and should therefore be "enforced as stated on the record."

Following receipt of the referee's order, we issued a briefing schedule requiring the parties to address, in part, (1) whether a stipulation for discipline may include a term stating that the attorney's admissions are conditional and that the case will be referred to a referee if we do not impose the discipline recommended by the parties, (2) whether

9

Riehm unconditionally admitted the allegations of misconduct alleged in the first amended petition and the second amended petition as a term of the parties' stipulation, and (3) why the 5-year suspension recommended by the referee is appropriate. Both parties filed briefs, and we held oral argument.

II.

Riehm argues that he conditionally admitted the Director's allegations of professional misconduct. When, as here, a party orders a transcript of a disciplinary hearing, the referee's findings and conclusions are not conclusive. Rule 14(e), RLPR. Still, we afford "great deference to the referee's findings and conclusions and will uphold them if they have evidentiary support in the record and are not clearly erroneous." *In re Paul*, 809 N.W.2d 693, 702 (Minn. 2012). "A referee's findings are clearly erroneous only if we are 'left with the definite and firm conviction that a mistake has been made.' " *In re Murrin*, 821 N.W.2d 195, 207 (Minn. 2012) (quoting *In re Lyons*, 780 N.W.2d 629, 635 (Minn. 2010)). When there is evidence in the record to support a referee's finding, the referee's findings are not clearly erroneous. *See In re Albrecht*, 779 N.W.2d 530, 540 (Minn. 2010).

Here, the referee found that "[t]he transcript of the hearing on July 13, 2015 sets out the nature of the agreement." But the referee did not make a finding regarding whether Riehm's admissions were conditional. Accordingly, the referee's finding that the transcript "sets out the nature of the agreement" is reviewable for clear error and the issue of whether Riehm's admission was conditional may be considered de novo. But

regardless of the standard of review, the record does not support a finding that Riehm's admissions were conditional.

A.

To discern the scope of the parties' oral stipulation, we need look no further than the elementary principles of contract law. A contract is formed when two or more parties exchange bargained-for promises, manifest mutual assent to the exchange, and support their promises with consideration. *See* Restatement (Second) of Contracts § 17 (1981). Generally, neither a signature nor a writing is required to make a contract binding. Rather, "where the parties have assented to all the essential terms of the contract and proceed to perform in reliance upon it, the mere reference to a future contract in writing will not negative the existence of the present, binding contract." *Asbestos Prods., Inc. v. Healy Mech. Contractors, Inc.*, 306 Minn. 74, 78, 235 N.W.2d 807, 809 (1975).

Here, the record shows that the terms of the oral stipulation were specific and that the parties proceeded in reliance upon these terms. At the July 13, 2015 hearing, the Director described the terms of the stipulation in detail. Pursuant to the stipulation, the Director requested that specific documents from Riehm's criminal proceedings be included in the record before our court, presumably to demonstrate that there were mitigating circumstances for us to consider when imposing discipline. In return, the Director stated that Riehm would be required to "admit[] *without equivocation* the allegations in the two petitions before [the referee]." (Emphasis added.) Riehm did not contradict the Director's statement but proceeded to admit the allegations under oath. After admitting the allegations, Riehm confirmed that he understood the terms of the oral

11

stipulation and that he had consulted with his attorney. At no point during the hearing did Riehm specify any additional conditions.[4] Although the referee requested that the Director prepare a written document memorializing the oral stipulation, the record does not show that the preparation of a written document was a condition precedent to the enforceability of the stipulation.

The parties then commenced performance of the terms of the oral stipulation. The Director presented the documents from Riehm's criminal proceedings to the referee and recommended an indefinite suspension of a minimum of 5 years. Riehm admitted the allegations of misconduct, and neither party pursued an evidentiary hearing. There is no doubt that the parties entered into a binding oral stipulation before the referee. Riehm is bound by his admissions.

B.

Riehm seems to argue that if we reject the recommended discipline, then the parties' agreement to enter into the stipulation lacked consideration. According to Riehm, the concept of a binding agreement "would have no meaning at all if the relinquishment of a right was not conditioned upon the receipt of some other benefit." The "benefit" Riehm seems to expect is an indefinite suspension of a minimum of 5 years, as opposed to a more severe penalty, such as disbarment. Under this logic, if we

---

[4] At oral argument, Riehm's counsel admitted that making Riehm's admissions conditional on receiving a specific disposition was a material term that he never discussed with the Director prior to entering into the oral stipulation before the referee.

impose a harsher sanction than the one proposed in the parties' stipulation, then Riehm will not have obtained the benefit of his bargain. We are not persuaded.

Consideration merely requires "that one party to a transaction voluntarily assume an obligation on the condition of an act or forbearance by the other party." *U.S. Sprint Commc'ns Co. v. Comm'r of Revenue*, 578 N.W.2d 752, 754 (Minn. 1998). Riehm received a significant benefit from the parties' agreement to enter into a stipulation: the Director recommended a minimum 5-year suspension rather than disbarment. Riehm's argument is meritless.

To summarize, Riehm unconditionally admitted the allegations of misconduct in the first amended petition and the second amended petition and agreed that, based on these admissions, the parties would recommend that he receive a minimum 5-year suspension. Riehm is not entitled to withdraw his admissions at this stage of the proceedings.[5]

III.

The Director also argues that, as a matter of law, an attorney may not condition his or her admissions to allegations of professional misconduct on receiving a specific disposition from our court. We agree with the Director.

Our court retains exclusive power to regulate attorney discipline proceedings. *In re Petition for Distribution of Attorney's Fees Between Stowman Law Firm, P.A.*, 870

---

[5] On appeal, Riehm also requests an evidentiary hearing before the referee on the issue of whether he acted in self-defense while committing the assault. Because Riehm unconditionally admitted the allegations of misconduct, he cannot now allege additional mitigating factors. Accordingly, we decline to address Riehm's evidentiary arguments.

N.W.2d 755, 759 (Minn. 2015); *In re Petition for Integration of Bar of Minn.*, 216 Minn. 195, 199, 12 N.W.2d 515, 518 (1943). We "retain the final independent interpretive authority to define the scope and application of [attorney discipline] rules." *Prod. Credit Ass'n of Mankato v. Buckentin*, 410 N.W.2d 820, 823 (Minn. 1987). Our constitutional duty to regulate the practice of law is derived from the separation of powers in the Minnesota Constitution. *See Sharood v. Hatfield*, 296 Minn. 416, 424, 210 N.W.2d 275, 279 (1973); *see also* Minn. Const. art. III, § 1 (describing the separation of powers).

To implement our duty to regulate the legal profession, we adopted a code of professional responsibility. *Minneapolis Star & Tribune Co. v. Hous. & Redev. Auth.*, 310 Minn. 313, 319, 251 N.W.2d 620, 623 (1976). We also promulgated the Rules on Lawyers Professional Responsibility, which describe procedures for disciplinary investigations and proceedings. *See* Rule 2, RLPR. The purpose of an attorney discipline proceeding is to assess an attorney's fitness to practice law, including the attorney's personal integrity. *See In re Schmidt*, 402 N.W.2d 544, 548 (Minn. 1987). An attorney who behaves dishonestly not only obstructs the fair administration of justice, *id.* at 548-49, but also weakens public confidence in the legal profession, *see In re Glasser*, 831 N.W.2d 644, 648 (Minn. 2013).

A conditional admission to allegations of professional misconduct violates the principles of truth and candor fundamental to the purpose of attorney discipline proceedings. By conditioning an admission on receiving a particular form of discipline, an attorney creates the perception that the admissions made may or may not be truthful.

14

To allow the practice of conditional admissions would, therefore, cast doubt on the integrity of the attorney discipline process.

Riehm incorrectly claims that our case law has expressed "implicit approval" of conditional admissions to allegations of misconduct. The only case remotely on point is *In Re Perl*, in which we discussed a conditional admission without holding that the admission was improper. 407 N.W.2d 678, 679 (Minn. 1987). But when we decided *Perl*, the RLPR affirmatively allowed attorneys to condition their admissions upon receiving a particular disposition. Rule 13(b), RLPR (1988) ("Conditional admission. The answer may tender an admission of some or all accusations conditioned upon a stated disposition."). We repealed the conditional-admission rule in 1988, the year after we decided *Perl*. *Order Promulgating Rules on Lawyers Prof'l Responsibility*, No. C1-84-2140, Order at 19 (Minn. filed Sept. 14, 1988).

None of the other cases Riehm cites even hint at allowing a conditional admission to professional misconduct.[6] To the contrary, since our repeal of the conditional-

---

[6]     Riehm also cites *In re Rymanowski*, 809 N.W.2d 217 (Minn. 2012); *In re Aitken*, 787 N.W.2d 152 (Minn. 2010); and *In re Overboe*, 745 N.W.2d 852 (Minn. 2008). Riehm does not explain why he believes these cases discuss conditional admissions to allegations of misconduct, and we can find no support for Riehm's proposition in these opinions. We speculate that Riehm refers to our quotation of Rule 25(a)(4), RLPR, which discusses "conditional admission agreement[s]." *See Rymanowski*, 809 N.W.2d at 221 n.13; *Aitken*, 787 N.W.2d at 160-61; *Overboe*, 745 N.W.2d at 865. But the phrase "conditional admission agreement" in Rule 25(a)(4), RLPR, refers to a conditional admission *to the bar* so that an attorney may practice law in Minnesota. *See, e.g.*, Rule 26, RLPR (regulating the "duties of [a] disciplined, disabled, conditionally admitted, or resigned lawyer"); Rule 27(a), RLPR (discussing "a suspended, disbarred, resigned, or disabled lawyer, or a lawyer whose conditional admission has been

(Footnote continued on next page.)

admission rule, the Director has advised attorneys that they may not conditionally admit allegations of professional misconduct. The Director is correct. We hold that, in attorney discipline matters, an attorney may not condition his or her admissions to allegations of professional misconduct on receiving a specific disposition from our court.

IV.

Having concluded that the parties' oral stipulation was binding and unconditional, we must decide the appropriate discipline. The parties stipulated that a minimum 5-year suspension is appropriate,[7] and the referee recommended that we accept the parties' proposed discipline. We bear "final responsibility" for imposing discipline on Minnesota attorneys, *In re Jones*, 834 N.W.2d 671, 681 (Minn. 2013), and we serve as "the sole arbiter of the discipline to be imposed," *In re Singer*, 541 N.W.2d 313, 315 (Minn. 1996). But we give "significant weight" to a referee's recommendation. *Id.* We also "give some deference to the Director's decision to enter into a stipulation for discipline." *In re Olson*, 872 N.W.2d 862, 864 (Minn. 2015). We do so because the Director is "in the best position to weigh the cost and risk of litigation and to determine when a stipulated discipline will best serve the interests of the [Lawyers Professional Responsibility] Board." *In re Berg*, 741 N.W.2d 600, 606 (Minn. 2007).

---

(Footnote continued from previous page.)
revoked"); *see also In re Stanek*, 822 N.W.2d 809, 809-10 (Minn. 2012) (discussing a "conditional admission to the practice of law in Minnesota").

[7]     The Director has not sought to be released from the stipulation.

16

The purpose of attorney discipline "is not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010). We are guided by four factors when imposing discipline: the nature of the misconduct, the cumulative weight of the disciplinary violations, the harm to the public, and the harm to the legal profession. *In re Nelson*, 733 N.W.2d 458, 463 (Minn. 2007). We also consider any aggravating and mitigating factors. *Id.* at 463-64. Similar cases provide useful guidance, but the appropriate discipline is tailored to the facts of each case. *Id.* We address these factors in turn.

A.

First, the nature of Riehm's misconduct is serious. In only one case have we addressed the appropriate discipline for an attorney who committed first-degree assault. *See In re Pitera*, 827 N.W.2d 207, 211 (Minn. 2013). We disbarred the attorney, in part, because first-degree assault is "a serious crime of violence" that warrants "significant discipline." *See id.* at 211-13 (disbarring attorney who had violated multiple rules of professional conduct).

Riehm's referral agreements also involved serious misconduct. Riehm engaged in dishonest conduct by assisting M.M. in keeping the referral agreement secret from M.M.'s firm. *See In re Houge*, 764 N.W.2d 328, 339 (Minn. 2009) ("Severe discipline is warranted where a lawyer's conduct is dishonest and lacks integrity."); *In re Dedefo*, 752 N.W.2d 523, 532 (Minn. 2008) ("We take dishonesty by lawyers seriously and have repeatedly held that a lack of truthfulness or candor warrants severe discipline."). And

17

Riehm deprived his clients of important information by failing to adequately explain that he would be sharing fees with a lawyer in another firm. *See Christensen v. Eggen*, 577 N.W.2d 221, 225 (Minn. 1998) (explaining that the rules governing fee-sharing agreements between lawyers in different firms protect each client's "right to choose the attorney that he/she prefers and to be knowledgeable about the specifics of his/her case, especially those terms regarding the payment of fees").

B.

Second, we consider the cumulative weight of Riehm's disciplinary violations. In disciplinary proceedings, we do not consider each violation in isolation. Rather, we account for "the cumulative weight and severity of multiple disciplinary rule violations." *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004).

Riehm's misconduct related to the dishonest referral agreements involved multiple instances of misconduct over a substantial period. The dishonest referral agreements existed for more than 1 year and involved more than 100 referrals. Riehm undertook representation in 23 of these matters, ultimately paying M.M. $11,000 in shared fees without disclosing the fee-sharing agreement to these clients. In addition, Riehm committed first-degree assault. When viewed as a whole, the cumulative weight of Riehm's misconduct warrants severe discipline.

C.

We next consider the harm Riehm caused to the public and to the legal profession. A conviction for a felony-level crime of violence harms both the public and the legal profession by "undermin[ing] the public's confidence in the ability of attorneys to abide

18

by the rule of law." *Pitera*, 827 N.W.2d at 212. And Riehm's dishonest conduct harmed the public and the legal profession because the honesty of attorneys is integral to the practice of law. *See In re Ruffenach*, 486 N.W.2d 387, 391 (Minn. 1992) ("Honesty and integrity are chief among the virtues the public has a right to expect of lawyers.").

D.

Finally, we consider similar cases. The closest case on point is *Pitera*, in which we disbarred an attorney who had committed first-degree assault and also violated several other rules of professional conduct. 827 N.W.2d at 208-09.[8] Although our disposition in *Pitera* reflects the seriousness of Riehm's misconduct, the Director observes that certain facts present in *Pitera* have not been established in this case.

First, both Riehm and the Director argue that *Pitera* is distinguishable because Riehm was given the opportunity to serve probation, a substantial downward dispositional departure from the presumptive sentence of imprisonment. In contrast, Pitera was sentenced to 75 months in prison. *Id.* at 210. According to Riehm, imprisonment is analogous to disbarment, whereas Riehm's sentence of probation is more analogous to suspension. We disagree that there is a direct analogy between imprisonment and disbarment. But, to some extent, the downward dispositional departure in Riehm's sentence does reflect Riehm's cooperation during the trial and

---

[8] In addition to his first-degree felony assault conviction, Pitera failed to (1) pay a law-related judgment, (2) appear at a hearing, (3) communicate his anticipated absence at that hearing to the district court or his client, (4) refund any portion of an unreasonable fee, and (5) cooperate with the disciplinary process. *Pitera*, 827 N.W.2d at 208. In doing so, he violated Minn. R. Prof. Conduct 1.3, 1.4(b), 1.5(a), 3.2, 3.4(c), 8.1(d), and 8.4(d), as well as Rule 25, RLPR. *Id.* at 208-09.

sentencing process, as reflected in Riehm's sentencing documents. In that sense, Riehm's sentence is a factor that distinguishes this case from *Pitera*.

Second, Pitera had been disciplined in the past, and we considered his prior disciplinary history as an aggravating factor. *Id.* at 212. Although Riehm's lack of prior disciplinary history is not a mitigating factor, *In re Torgerson*, 870 N.W.2d 602, 614 (Minn. 2015), Riehm's lack of prior disciplinary history distinguishes this case from *Pitera*.

Finally, Pitera failed to respond to several requests for information during the disciplinary investigation. 827 N.W.2d at 209. In *Pitera*, we said that "noncooperation with the disciplinary process, by itself, may warrant indefinite suspension and, when it exists in connection with other misconduct, noncooperation increases the severity of the disciplinary sanction." *Id.* at 211 (quoting *Nelson*, 733 N.W.2d at 464). Unlike Pitera, Riehm has provided the information requested by the Director throughout these disciplinary proceedings. Additionally, Riehm entered into a stipulation for discipline. Here again, Riehm's cooperation with the Director is not a mitigating factor. *See Torgerson*, 870 N.W.2d at 614. Rather, we simply observe that the lack of cooperation with the Director that was present in *Pitera* is not present here.

Although we recognize that Riehm cooperated with the Director's investigation, we are troubled by Riehm's conduct before our court. In November 2014 Riehm entered into an internally contradictory stipulation. Riehm now argues that the July 2015 stipulation was conditional; yet, he admitted at oral argument that he did not raise this issue with the Director before putting the terms of the agreement on the record before the

20

referee. Riehm's positions border on frivolous and have substantially delayed resolution of this matter.

E.

Having considered the above factors, we must decide the appropriate discipline for Riehm's misconduct. This is a close issue. Riehm's misconduct is serious and arguably warrants disbarment. But we give some deference to the Director's decision to enter into a stipulation, and we also give weight to the referee's recommendation. Moreover, a minimum 5-year suspension is lengthy and subject to reinstatement procedures, *see* Rule 18, RLPR. Accordingly, we impose the parties' recommended discipline of an indefinite suspension for a minimum of 5 years.

V.

To summarize, we hold that the parties' oral stipulation for discipline was binding and that Riehm unconditionally admitted the allegations of misconduct. We further hold that attorneys may not condition their admissions to allegations of misconduct upon receiving a particular disposition from our court. Finally, although Riehm's misconduct was serious, we defer to the recommendations of the Director and the referee. We therefore suspend Riehm from the practice of law indefinitely, with no right to petition for reinstatement for a minimum of 5 years.

We hereby order that:

1. Respondent Michael John Riehm is indefinitely suspended from the practice of law, effective 14 days from the date of the filing of this opinion, with no right to petition for reinstatement for 5 years.

21

2.      Respondent shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

3.      Respondent shall pay $900 in costs pursuant to Rule 24, RLPR.

4.      Respondent may petition for reinstatement pursuant to Rule 18(a)-(d), RLPR.   Reinstatement is conditioned on: (a) successful completion of the written examination required for admission to the practice of law by the State Board of Law Examiners on the subject of professional responsibility; and (b) satisfaction of continuing legal education requirements pursuant to Rule 18(e), RLPR.


CHUTICH, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.